**F I L E D**
United States Court of Appeals
Tenth Circuit

JAN 7 1999

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CARYN MCCUE,

       Plaintiff-Appellee-Cross-
       Appellant,

v.

STATE OF KANSAS,
DEPARTMENT OF HUMAN
RESOURCES; JOE DICK; JOSEPH
YBARRA; BILL MEDLOCK; BOB
MOLANDER,

       Defendants-Appellants-Cross-
       Appellees.

Nos. 96-3412, 97-3004, 97-3238

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 95-2116-DES)

---

Deanne Watts Hay, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, L.L.C.,
Topeka, Kansas, for Defendants-Appellants-Cross-Appellees.

Timothy W. Monsees, of Monsees, Miller & Defeo, Kansas City, Missouri, for
Plaintiff-Appellee-Cross-Appellant.

---

Before **BALDOCK** , **MCKAY** , and **HENRY** , Circuit Judges.

---

**HENRY** , Circuit Judge.

During her employ as a special investigator with the Quality Control Unit of the Kansas Department of Human Resources, plaintiff Caryn McCue was allegedly sexually harassed by her immediate supervisor, defendant Joseph Ybarra. After three years of alleged harassment, she filed an internal complaint, and nearly three years later she was discharged. She filed the instant suit approximately two years after her termination. She brought actions against the State of Kansas, the Department of Human Resources ("Department"), and various Department employees, alleging sexual harassment, retaliation, defamation, and negligent infliction of emotional distress. The district court granted defendants' motions for summary judgment on several claims, retaining jurisdiction only over the Title VII retaliation action against the Department. At trial, a jury found for Ms. McCue on the retaliation claim and returned a verdict, part advisory and part binding, of $300,000 ($50,000 emotional distress; $75,000 back pay; $175,000 front pay). The district court entered judgment in accordance with the verdict, and subsequently granted Ms. McCue's application for attorneys' fees.

The Department appeals the district court's jury instructions, failure to dismiss as a matter of law, admission of certain evidence, submission of the issue of front pay to the jury, and the award of attorneys' fees. Ms. McCue cross-

appeals the district court's grants of summary judgment against her claims, and admission and exclusion of certain evidence. We affirm the district court's challenged jury instructions, evidentiary rulings, and its ruling on the judgment as a matter of law; we reverse the court's ruling on front pay; and we remand for further action. Pursuant to Ms. McCue's motion for voluntary dismissal and Rule 42(b) of the Federal Rules of Appellate Procedure, we dismiss Ms. McCue's cross-appeals.

## BACKGROUND

Caryn McCue, the plaintiff, is a former employee of the Kansas Department of Human Resources. Ms. McCue alleges that from 1986 to October, 1990, her supervisor, defendant Joseph Ybarra, harassed her by soliciting her for sex, making lewd comments about her, and threatening her job security should she ever complain of his behavior.

On October 4, 1990, Ms. McCue filed an internal discrimination complaint. The Department subsequently had defendant Bill Medlock intervene to supervise Ms. McCue and to prevent future contact between Ms. McCue and Mr. Ybarra. Upon hearing of Ms. McCue's internal complaint, Mr. Ybarra allegedly said he was going to fire Ms. McCue. One and one half months later, Ms. McCue received her first unsatisfactory evaluation in twelve years.

On February 2, 1991, Ms. McCue filed a charge of discrimination with the

EEOC and with the Kansas Commission on Civil Rights. The charge alleged Mr. Ybarra had retaliated for her having filed an internal complaint; on April 10, 1991, Ms. McCue amended the charge to include an allegation of sexual harassment. On January 11, 1993, the EEOC issued Ms. McCue a "right to sue" letter indicating that she had ninety days in which to file her claim.

The Department discharged the plaintiff on August 19, 1993, allegedly for unsatisfactory work performance. Ms. McCue filed a second charge of discrimination with the EEOC on September 15, 1993. She filed the instant suit on March 9, 1995.

## I.  Challenge to Jury Instructions and to the Denial of Motion for Judgment as a Matter of Law

The State first challenges the district court's instructions to the jury and the district court's refusal to grant its motion for judgment as a matter of law. These challenges rest on the State's assertion that, as a matter of law, the State cannot intend to act absent a statutory authorization to an authorized agent allowing such action be taken on behalf of the state. More simply, the State argues it can only have intent as outlined in statutes or pursuant to state policy. The State thus argues that because state policy forbids retaliation, the State cannot be liable.

We review the district court's decision to give or not give a particular

instruction for abuse of discretion, Allen v. Minnstar, Inc., 97 F.3d 1365, 1368 (10th Cir. 1996), but such a decision is reviewed de novo when "the real question raised by [appellant's] proposed instructions" is whether the jury should decide the matter at all – a question of law. United States v. Pena, 930 F.2d 1486, 1491 (10th Cir. 1991). "We review de novo the district court's determination of a motion for judgment as a matter of law, applying the same standard as the district court." Mason v. Oklahoma Turnpike Auth., 115 F.3d 1442, 1450 (10th Cir. 1997).

In denying the State's motion for judgment as a matter of law, the district court found the State's argument unsound in its suggestion that "intent [for purposes of a Title VII retaliation claim] must reside in the entity with final termination authority." McCue v. Kansas Dep't of Human Resources, No. CIV.A95-2116-DES, 1997 WL 231044, at *1 (D. Kan. Apr. 24, 1997) [hereinafter, "District Opinion"]. The court noted that the State provided no support for this premise, and that were the premise true, the resulting law would be unreasonable – "reward[ing] deceitfulness by insulating an organization from liability for retaliatory discharge where the decision-maker is kept ignorant of its subordinates' scheme." Id.

On appeal, the State has presented us some authority, but it is not pertinent to our inquiry. The cases cited by the State are section 1983 cases and a Title IX

5

case.  See City of St. Louis v. Praprotnik, 485 U.S. 112 (1988) (§ 1983 action); Jett v. Dallas Indep. School Distr., 491 U.S. 701 (1989) (§1983 action); Gebser v. Lago Vista Indep. School Distr., 118 S.Ct. 1989 (1998) (Title IX action).  There is no basis for analogizing from the section 1983 and Title IX cases to Title VII cases.  Title VII applies specifically to "employers."  42 U.S.C. § 2000e-2. "Employers" are defined to include "agents" of the actual employer.  See 42 U.S.C. § 2000e.  As a result of this clear statutory instruction, courts have long and consistently held that the scope of liability in Title VII actions is defined by the law of agency.  See, e.g., Sauers v. Salt Lake County, 1 F.3d 1122, 1125 & n.3 (10th Cir. 1993).

Employer liability in section 1983 actions is restricted away from agency principles because section 1983 permits a lawsuit against a "person" in his individual capacity.  See 42 U.S.C. § 1983.  Title IX does not even include an explicit private right of action, although the Supreme Court has implied a right of action to enforce the general guarantee provided for by Title IX.  See Gebser, 118 S.Ct. at 1994.  The distinctions in language, form, purpose, and content of the three statutes preclude any reasonable analogies between them with regard to the applicability of respondeat superior in actions maintained under each statute.  In fact, the Supreme Court has noted this distinction expressly when it found that agency principles would not apply under Title IX.  See id. at 1996 ("Title IX

contains no comparable reference [as does Title VII] to an educational institution's 'agents,' and so does not expressly call for application of agency principles.").

There is simply no basis to restrict liability in Title VII retaliation actions away from the law of agency. The plain language of the statute establishes that agency principles control liability, as do court decisions interpreting the statute and comparing it to other statutes. Finally, permitting such a loophole for avoiding liability would effectively destroy any Title VII retaliation actions. The district court erred neither in its instructions to the jury nor in its denial of the motion for judgment as a matter of law.

## II. Evidentiary Errors

The State identifies three evidentiary errors and one error in failure to give a limiting instruction, the cumulative effect of which, it argues, impacted the verdict and mandates a new trial. We review a district court's decision to admit or exclude evidence for abuse of discretion. Cartier v. Jackson, 59 F.3d 1046, 1048 (10th Cir. 1995). We also review the district court's decision to limit or refusal to limit the scope of evidence for abuse of discretion. Messina v. Kroblin Trans. Sys., Inc., 903 F.2d 1306, 1310 (10th Cir. 1990).

We hold the district court may have erred in admitting bad character

7

evidence about Mr. Medlock, and erred in failing to offer a limiting instruction on the use of Exhibit 33. However, the potential error and error were each harmless, and the two errors are harmless when weighed cumulatively.

A. *Admission of Evidence of Sexual Harassment in Title VII Retaliation Action.*

The district court dismissed Ms. McCue's Title VII harassment claim as time-barred on the State's motion for summary judgment. Ms. McCue's Title VII retaliation claim was allowed to proceed. In the retaliation trial the district court denied State's motion in limine to exclude evidence of alleged sexual harassment of Ms. McCue by her supervisor, Mr. Ybarra.

The State objects to the evidence on the grounds that it is irrelevant and highly prejudicial. We review the district court's admission of evidence under Federal Rule of Evidence 403 [1] for abuse of discretion. See United States v. Wacker, 72 F.3d 1453, 1469 (10th Cir. 1995). We affirm the district court because we cannot say the court erred in finding the probative value of the evidence was not substantially outweighed by its prejudicial value.

To establish a prima facie case of retaliation, the plaintiff must show (1)

---

[1] "Although relevant, evidence may be excluded *if its probative value is substantially outweighed by the danger of unfair prejudice*, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403 (emphasis added).

that she engaged in a protected activity, (2) that she was subjected to adverse employment action by her employer, and (3) that a causal connection exists between the protected activity and the adverse amployment action. See Murray v. City of Sapulpa, 45 F.3d 1417, 1420 (10th Cir. 1995). The protected activity in which Ms. McCue engaged was filing an internal complaint of harassment and subsequently filing a complaint with the EEOC. The State argues that because it stipulated to the first element of the retaliation claim – that Ms. McCue had engaged in protected activity – Ms. McCue was precluded from introducing evidence of the harassment that led to that activity.

However, a plaintiff's presentation of a prima facie case merely shifts the burden to the defendant to show that the adverse action was taken for a legitimate reason. See Sorenson v. City of Aurora, 984 F.2d 349, 352 (10th Cir. 1993). The State satisfied this burden by establishing Ms. McCue's decreased productivity as a legitimate reason for her dismissal. Thus, the burden returns to the plaintiff to establish "by a preponderance of all the evidence in the case that the legitimate reasons offered by the defendant were a pretext for discrimination." Id.

Ms. McCue alleged that her decreased productivity was the direct result of the ongoing sexual harassment, and thus the seemingly legitimate reason for termination was no more than a pretext. Of course, to make this allegation successfully, Ms. McCue needed to introduce evidence of the harassment. The

9

jury would judge the credibility of her claim that her performance suffered as a result of the harassment based on its judgment as to the severity of the harassment. Only by introducing evidence of the harassment could Ms. McCue establish its severity in the manner required to satisfy her not insubstantial burden of establishing by a preponderance of the evidence that the proffered reason for her termination was mere pretext. This Circuit has allowed similar evidence for a similar purpose. See Pitre v. Western Elec. Co. Inc., 843 F.2d 1262, 1270 (10th Cir. 1988) ("Evidence of harassment . . . helps create an inference of discrimination in [defendant's] promotion and demotion practices."). The district court employed this same rationale to decide the admission of the evidence was not error in denying the State's motion for a new trial. We affirm the decision of the district court.

In affirming, however, we note our concern that this evidence is very prejudicial. The State points out that the sexual harassment was not at issue in the retaliation trial and thus was not compensable. However, it would be nearly impossible to separate the damages caused by harassment from those caused by retaliation. There is a very real danger that by permitting this evidence to be heard, the damages will reflect an injury not at issue in the trial. That said, the district court made a determination that the prejudice of the evidence did not substantially outweigh its probative value. The court carefully outlined the

10

reasons for admitting the evidence, and we cannot say that the district court's weighing of prejudice against relevance was an abuse of discretion.

The State also objects to the district court's omission of its proposed instruction number 9, stating in part "[r]etaliation is the sole basis on which you may award damages.  You must not concern yourselves with . . . sexual harassment."  Apnt's Br. at 31.  "Because [the State] did not object to the district court's omitting the aiding and abetting instruction, we review only for plain error."  United States v. Peach , 113 F.3d 1247, 1997 WL 282867, *6 (10th Cir. 1997) (citing Fed.R.Crim.P. 52(b)).  "[A]n error in jury instructions will mandate reversal of a judgment only if the error is determined to have been prejudicial, based on a review of the record as a whole."  Durflinger v. Artiles , 727 F.2d 888, 895 (10th Cir.1984).  Jury instruction number 11 included the following direction: "You may award damages only for injuries that plaintiff proves were caused by defendant's retaliation."  Apnt. App. vol. II at 442.  The inclusion of direction like that in instruction number 11, in place of the State's requested instruction number 9, is not plain error.


B.      *Admission of Character Evidence About Mr. Medlock.*

The State also argues error in the admission of evidence alleging Mr. Medlock – the supervisor interposed between Ms. McCue and Mr. Ybarra after

11

her initial complaint – assigned work in a sexually discriminatory manner two years after Ms. McCue's termination. The district court defended the admission in denying the motion for new trial on the ground that this evidence, like the evidence of Mr. Ybarra's sexual harassment of Ms. McCue, served to show the pretextual nature of the proffered reason for McCue's termination. We hold that even were the admission of the evidence error, it was harmless error.

It is difficult to imagine a legitimate ground for admitting the evidence. It cannot be admitted for impermissible use of showing action in conformity with other bad acts. Fed. R. Evid. 404(b) ("Evidence of other . . . wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."). The evidence should not have been admitted – as the plaintiff argues on appeal that it was – "to show the disparate treatment by [the Department] of men compared to women."    See Aple's Br. at 29. Ms. McCue would have the jury reason that because Mr. Medlock allegedly acted in a sexually discriminatory manner two years after Ms. McCue's termination, he had the character of one who sexually discriminates. Thus, he might have discriminated when supervising Ms. McCue. This inference is precisely the sort proscribed by Rule 404(b); inferring character from an act, and then a different act from that character, is impermissible.

Federal Rule of Civil Procedure 61 admonishes that a new trial should not be granted for an error "unless refusal to take such action appears to the court inconsistent with substantial justice." Fed. R. Civ. Pro. 61. In this case, a good deal of evidence had correctly been admitted to show sexual harassment in Ms. McCue's workplace. For example, testimony had been admitted [2] suggesting that Mr. Ybarra asked Ms. McCue to let him take nude pictures of her, and had repeatedly, with the use of vulgar language, asked Ms. McCue to engage in various sexual activities with him, and threatened her job security. Aplt. App. vol. III, at 912, 913, 914 (testimony of Ms. McCue). The district court noted that the sexual harassment evidence "lasted for a few minutes of a week long trial." District Opinion at *4. The additional suggestion that two years after Ms. McCue's termination her supervisor may have acted in a discriminatory manner is so relatively insignificant that it could not reasonably be expected to change the outcome of the trial. Admission of the evidence may have been error, but looking at the record as a whole, it is not "inconsistent with substantial justice."

C. *Admission of the Letter, and Failure to Give Limiting Instruction.*

The State next objects to the admission of a letter from plaintiff's counsel to the Secretary of the Department on the ground that the letter was hearsay. The

---

[2] This evidence was admitted properly, as discussed in section II.A, supra, to show the pretextual nature of the Department's proffered reasons for discharging the plaintiff.

13

district court reasoned the letter was not hearsay because it was not offered to prove the truth of anything asserted therein.    See Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). The letter was offered "simply to counter the defense counsel's characterization of the letter in her opening statement and to establish that defendant had notice of the fact and nature of Ms. McCue's complaints." District Opinion, at *4. Defense counsel had characterized the letter in opening statements as saying, "If you fire me, I'm going to sue you." Aplt. App. vol. III, at 787. The letter was offered to rebut this characterization. When the plaintiff sought to introduce the first paragraph of the letter, the defense objected unless the jury could "see the whole" of the letter. Apnt. App. vol. III, at 955. The court admitted the entire letter over defense's alternative hearsay objection.

The State moved for a limiting instruction to the jury that the letter should be used only to rebut the earlier characterization of the letter. The district court agreed to give a limiting instruction,    see Aplt. App. vol. III, at 955, but then failed to do so. The State does not cite to the record as to whether it called the omission to the court's attention before the jury retired. The district court, in the motion for a new trial, conceded the failure to offer the instruction was error, but refused to find that the omission "so substantially affected defendant's rights as to

14

merit a new trial." District Opinion, at *4. We agree.

The letter introduces very little that is not duplicative of evidence properly admitted already. It merely suggests facts that are largely cumulative to the evidence otherwise offered at trial. As discussed in the previous section, enough testimony had legitimately been admitted that tended to show sexual harassment in the Department, that the conclusory restatement of those allegations in letter form does not cause the trial to be substantially unjust. Fed. R. Civ. Pro. 61. The one allegation made by the letter which is not duplicative of evidence already before the jury is that Mr. Ybarra "physically sexually abused and harassed Ms. McCue . . . [by] touching." Apnt. App. vol. VI at 1804. This seems to be the only allegation of physical harassment on the record. Again, however, we conclude that the erroneous inclusion of one unsupported sentence, amidst a week-long trial, is simply not sufficient ground to merit ordering a new trial.

D.  *Cumulative Impact of Errors Not Sufficient to Order New Trial.*

"A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir. 1990) (en banc). In this case we have found one potential evidentiary error, and one instructional error, each of which

15

itself was harmless. Aggregating these errors does not raise the impact on the trial appreciably. We hold the cumulative effect of these errors does not necessitate a new trial.

## III. Frontpay

The district court allowed the jury to determine the amount of front pay to be awarded Ms. McCue. The State submits that front pay is a form of equitable relief available under 42 U.S.C. § 2000e-5(g), to be awarded by the judge, not the jury. We agree with the State and therefore vacate the award of front pay and remand for the district court to determine the appropriate amount of front pay to be awarded.

Section 2000e-5(g) allows the court to award "equitable relief as [it] deems appropriate," for Title VII violations. Such relief explicitly includes back pay, although no mention is made of front pay. 42 U.S.C. § 1981a permits the award of punitive and compensatory damages as a matter of law for actions brought under Title VII. However, that same section expressly excludes from the allowed compensatory damages "backpay, interest on backpay, or any other type of relief authorized under [42 U.S.C. § 2000e-5(g)]." Section 1981a does allow compensatory damages for, among other things, "future pecuniary loss."

Damages awarded under section 2000e-5(g) are equitable relief to be

16

determined by the court, while damages awarded under section 1981a are legal damages that may be submitted to a jury. The District Court held that front pay is included in "future pecuniary loss," and thus is a form of legal damages to be determined by the jury. The State contends this holding is in error, because front pay is an "other type of relief authorized under [section 2000e-5(g)]," and thus expressly excluded from the available relief under section 1981a.

The District Court held that Congress knew how to expressly exclude back pay from the available relief under section 1981a, and could have similarly expressly excluded front pay if that were its intent. Furthermore, by including "future pecuniary loss" among the available relief, section 1981a's plain language permits front pay. This analysis fails.

Although this issue has not been decided expressly, courts generally take it upon themselves to calculate front pay as an equitable remedy under section 2000e-5(g). See, e.g., Kim v. Nash Finch Co., 123 F.3d 1046, 1054 n.3 (8th Cir. 1997). As early as 1989, two years before Congress passed section 1981a, the Tenth Circuit had indicated that front pay was included among the equitable remedies available under section 2000e-5(g): "Reinstatement is one of the express affirmative actions authorized under 42 U.S.C. § 2000e-5(g) and certainly 'front pay' would qualify as 'other equitable relief' the court may grant if it deemed appropriate." EEOC v. General Lines, Inc. 865 F.2d 1555, 1561 (10th

Cir. 1989). That such relief was available as "other equitable relief" under section 2000e-5(g) in 1991 – when section 1981a was passed – establishes that it would be included in the set of "any other type of relief authorized under [42 U.S.C. § 2000e-5(g)]." Since courts had indicated – prior to the passage of section 1981a – that front pay was included among the equitable relief available under section 2000e-5(g), we hold Congress to have excluded such relief under section 1981a.

Relegating the duty of determining front pay relief to the trial judge is reasonable as well as mandated by the statute, as this case shows well. In the instant case, a substantial amount of evidence about sexual harassment was presented to the jury. As discussed above, this evidence was not improperly admitted, but sexual harassment was not itself at issue in the lawsuit, and the dangers inherent in its admission were not insubstantial. It is possible that the sexual harassment evidence improperly impacted the jury determination of front pay; the jury awarded $175,000 in front pay. "Because of the potential for windfall, . . . [the award of front pay] must be tempered." Duke v. Uniroyal Inc., 928 F.2d 1413, 1424 (4th Cir. 1991). The district court is best-equipped to equitably determine the proper amount for this award.

Concluding the district court to have erred in submitting the issue of front pay to the jury, we vacate the award of front pay and remand the issue for

18

equitable determination by the district court.

## IV. Attorneys' Fees, Costs and Expenses

The State urges vacating the award for attorneys' fees, costs, and expenses on the ground that Ms. McCue is not a prevailing party if the State prevails on appeal. We have vacated and remanded one issue from below: the calculation of front pay. This change does not alter Ms. McCue's prevailing party status. Because we have not reversed on the merits, we need not reconsider the award of fees.

## V. Cross-Appeal

Ms. McCue filed a cross-appeal but has since moved for voluntary dismissal in an agreement signed by both parties pursuant to Rule 42 of the Federal Rules of Appellate Procedure. Because we grant the motion to dismiss, we need not consider the merits of the cross-appeal.

## Conclusion

The district court did not err by not instructing the jury that state law effectively controlled liability for Title VII actions, nor did it err in refusing to dismiss as a matter of law. The alleged evidentiary errors were each either not

errors or harmless, and the harmless errors considered cumulatively still did not merit a new trial.

Allowing the jury to determine front pay as a matter of damages was error. Front pay remains an equitable remedy available under section 2000e-5(g) and therefore expressly excluded from the damages available under section 1981a. We VACATE the award and REMAND for the district court to determine the equitable front pay award.

As Ms. McCue remains the prevailing party, attorneys' fees were properly awarded.

Ms. McCue's cross-appeal, pursuant to the motion for voluntary dismissal, is DISMISSED.