**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 8 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ALEX C. TRUJILLO,

      Plaintiff-Appellant,

v.

NEW MEXICO DEPARTMENT OF
CORRECTIONS,

      Defendant-Appellee.

No. 98-2143
(D.C. No. CIV-97-1046-RLP)
(D. N.M.)

---

**ORDER AND JUDGMENT**  *

---

Before **BRORBY** , **EBEL** , and **LUCERO** , Circuit Judges.

---

      Alex C. Trujillo appeals the district court's summary judgment dismissal of

his Title VII employment discrimination and retaliation complaint against

---

\*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

defendant, the New Mexico Department of Corrections. [1] We have jurisdiction under 28 U.S.C. § 1291, and we reverse in part and affirm in part.

We review the grant of summary judgment de novo, and apply the same legal standard used by the district court under Fed. R. Civ. P. 56(c). See Richmond v. ONEOK, Inc. , 120 F.3d 205, 208 (10th Cir. 1997). "Summary judgment is appropriate if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Rule 56(c)). "We construe the factual record and reasonable inferences therefrom in the light most favorable to the nonmovant." Id.

## I. Background.

Mr. Trujillo was hired by defendant in 1988 as a Psychologist II at the Central New Mexico Correctional Facility in Los Lunas, New Mexico. In 1991, he was promoted to Psychologist III and to Chief of the Mental Health Services in the Department of Corrections' Santa Fe facility. However, a newly-appointed Bureau Chief removed Mr. Trujillo as Chief of Mental Health Services at the Sante Fe facility in November 1992. According to Mr. Trujillo, although his job classification remained "Psychologist III," he was supervised by a "Psychologist

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

II" after his demotion, and his role and responsibilities thereafter were more in keeping with those of a "Psychologist II," rather than a "Psychologist III."     See Appellant's Appendix at 32, 70.

On May 16, 1994, Mr. Trujillo, who is part Hispanic and part Native American, filed a complaint with the Equal Employment Opportunity Commission (EEOC), alleging that he was demoted from his position at the Sante Fe facility and replaced by a lesser-qualified Anglo female because of his race, national origin and sex. The EEOC issued a "right to sue letter" on September 25, 1995, but Mr. Trujillo did not file a lawsuit arising out of his 1992 demotion.

In February 1995, Mr. Trujillo applied for a Psychologist III vacancy as Chief of the Mental Health Program at the Central New Mexico Correctional Facility in Los Lunas. Mr. Trujillo claims that he was a target for retaliatory action after he filed his 1994 EEOC complaint, and that one of the primary reasons he applied for the Los Lunas vacancy was to escape the hostile work environment he was experiencing at the Sante Fe facility. An interview committee of four professionals was established to interview candidates for the Chief of Mental Health position. The committee reported to Dr. Eli Fresquez, who had the ultimate hiring authority, that it unanimously recommended Mr. Trujillo be hired for the position.     See Appellant's Appendix at 74. The record includes an affidavit from one of the interview committee members stating that

the committee members thought Mr. Trujillo was the best qualified to fill the position.  Id. at 99, 101.

However, Dr. Fresquez rejected the committee's recommendation and interviewed other candidates on his own.  Dr. Fresquez did not interview Mr. Trujillo, despite the fact that he was the committee's unanimous recommendation.  Mr. Trujillo claims he was told that "a selection will not be made at this time."  See Appellant's Appendix at 132.  In fact,  Dr. Fresquez selected an Anglo female for the position.  The record contains an affidavit from one of the committee members stating that, after he learned that Mr. Trujillo had not been selected, he was told by another committee member that Mr. Trujillo's transfer "could be problematic as Trujillo had a suit against the [D]epartment."  Id. at 100. [2]  Mr. Trujillo claims that the woman selected for the Chief of Mental Services position was less qualified than he for the position because she lacked mental health services experience in the corrections field.

---

[2]   Defendant requested this affidavit be struck because it contained hearsay. The magistrate judge did not consider this affidavit, concluding that the term "suit" referred to an unidentified lawsuit other than Mr. Trujillo's 1994 EEOC complaint.  See Magistrate Judge's Order at 6 n.2.  We agree with Mr. Trujillo that the magistrate judge erred in not considering the affidavit on this basis.  The court is obligated to view the evidence presented in the light most favorable to Mr. Trujillo, as the nonmoving party.  Viewing the record in this light, there is no basis for the magistrate judge's conclusion that the ambiguous reference to a "suit" was not Mr. Trujillo's 1994 EEOC complaint.  The magistrate judge did not rule on the question of whether the affidavit was inadmissable as hearsay; thus, that issue is not before us.

Mr. Trujillo filed a second EEOC complaint on July 7, 1995, alleging that defendant denied his requested transfer to Los Lunas because of his 1994 EEOC complaint. On January 31, 1997, the EEOC issued a "right to sue letter," concluding that reasonable cause existed to believe the defendant had violated Title VII by denying Mr. Trujillo's transfer. The EEOC also concluded that the defendant had failed to maintain proper documentation of its hiring, promotions, and transfers in violation of 29 C.F.R. § 1602.31. The EEOC subsequently advised Mr. Trujillo that conciliation with defendant was unsuccessful, that it would not file suit, and that he had ninety days within which to file a Title VII action against defendant. On August 6, 1997, Mr. Trujillo filed this action within the requisite ninety days.

Mr. Trujillo's present complaint alleges that he was not selected for the Los Lunas vacancy because of his 1994 EEOC discrimination charge, and that the failure to transfer him was a separate act of discrimination based on his national origin. He also alleges that he was subjected to systematic retaliation and a hostile work environment after he filed his 1994 EEOC complaint, and that he was ultimately forced to resign because of the hostile work environment created by defendant's retaliatory actions.

The magistrate judge, sitting by designation, dismissed the complaint, finding as a matter of law that defendant's denial of Mr. Trujillo's requested

-5-

lateral transfer to Los Lunas did not constitute an adverse employment action, a requisite element of a Title VII employment discrimination claim.

## II. Analysis.

### A. Retaliation Claim.

Title VII makes it an unlawful employment practice "for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Section 2000e-2(a) lists actions that can constitute discrimination, specifying a refusal to hire, a discharge, or any discriminatory treatment with respect to "compensation, terms, conditions, or privileges of employment." The three-pronged burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), applies to Mr. Trujillo's claims. In the absence of direct evidence, a prima facie case of retaliation requires a plaintiff to show that (1) he engaged in protected opposition to discrimination; (2) he was subjected to adverse employment action by the employer; and (3) a causal connection exists between the protected activity and the adverse action. See McCue v. Kansas, Dep't. of Human Resources, 165 F.3d 784, 789 (10th Cir. 1999). "If a prima facie case is established, the burden of production shifts, and the defendant must articulate a legitimate, nondiscriminatory reason for the adverse action." Purrington v.

University of Utah , 996 F.2d 1025, 1033 (10th Cir. 1993). If the employer offers such a reason, the plaintiff may survive summary judgment by showing that there is a genuine dispute of material fact as to whether the proffered reason for the challenged action is pretextual. See Richmond , 120 F.3d at 208.

Mr. Trujillo contends that the magistrate judge erred in holding that defendant's denial of his Los Lunas transfer request, under the circumstances presented here, did not amount to an adverse employment action. We conclude that the magistrate judge applied an incorrect and overly strict definition of "adverse employment action," and we agree that the magistrate judge erred in holding that, as a matter of law, defendant's failure to select Mr. Trujillo for the Los Lunas vacancy was not an adverse employment action.

The magistrate judge concluded that the Tenth Circuit had not precisely defined what constitutes an adverse employment action and, citing to an unpublished district court opinion, concluded that such an action must be "materially detrimental." Magistrate Judge's Order at 5. Several months after the magistrate judge's ruling, however, this court made clear that we reject a requirement that an employment action must be material in order to be adverse, stating that this court "has never recognized such a 'materiality' requirement and we decline to do so here." Jeffries v. Kansas , 147 F.3d 1220, 1232 (10th Cir. 1998).

The Tenth Circuit liberally defines the phrase "adverse employment action." See Gunnell v. Utah Valley State College, 152 F.3d 1253, 1264 (10th Cir. 1998); Jeffries, 147 F.3d at 1232. Such actions are not simply limited to monetary losses in the form of wages or benefits. See Jeffries, 147 F.3d at 1232. We take "a case-by-case approach," examining the unique factors relevant to the situation at hand. Id. For example, in Corneveaux v. Cuna Mutual Insurance Group, 76 F.3d 1498, 1502 (10th Cir. 1996), we found adverse employment action based on the fact that the employee had to "go through several hoops" in order to obtain her severance benefits. In Jeffries, we held that verbal interrogation and reprimand, threats to withdraw supervision and not renew the employee's contract were sufficient to constitute adverse employment actions even though the actions did not actually have an adverse impact on the terms and conditions of the employee's employment. See 147 F.3d at 1232-33.

The Tenth Circuit recently held that an involuntary lateral transfer, without more, does not constitute an "adverse employment action" where the transfer merely increased the employee's commute and did not alter her salary, benefits, or elementary school teaching responsibilities, and the transfer was prompted by decreasing student enrollment. See Sanchez v. Denver Pub. Schs., 164 F.3d 527, 532 (10th Cir. 1998). The court wrote, " we will not consider 'a mere inconvenience or an alteration of job responsibilities' to be an adverse

employment action." Id. (citing Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993); and Burlington Indus., Inc. v. Ellerth, 118 S. Ct. 2257, 2268 (1998) (conduct is adverse employment action if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits")). Our holding in Sanchez is consistent with several circuits which have held that a purely lateral transfer is not an adverse employment action. See Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1452 (11th Cir. 1998) (transfer was not a demotion; transfer had same salary, benefits, seniority, and relative level of prestige); Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997) (same); Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 886 (6th Cir. 1996) (transfer that did not entail a loss of pay, benefits, duties, or prestige was not adverse action); Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996) (purely lateral transfer which does not involve demotion in form or substance was not adverse action); Crady, 993 F.2d at 136 (lateral transfer with semantic change in title and alteration of job responsibilities not adverse employment action).

However, where the transfer is not purely lateral, that is, where the transfer is objectively equivalent to a demotion, courts in other circuits have recognized the transfer as an adverse action. See de la Cruz v. New York City Human

-9-

Resources Admin. Dep't of Social Servs., 82 F.3d 16, 21 (2d Cir. 1996) (transfer to a less prestigious job with little opportunity for professional growth arguably altered the terms and conditions of employment and was an adverse employment action in a Title VII discrimination action); Torre v. Casio, Inc., 42 F.3d 825, 831 n.7 (3d Cir. 1994) (allegation of transfer to dead-end job sufficient to create material fact issue of adverse employment action); Collins v. Illinois, 830 F.2d 692, 704 (7th Cir. 1987) (transfer an adverse employment action where the transfer was really a demotion; employee lost her office and her professional listing as a library consultant).

The First Circuit has held that an employer's refusal to grant an employee's requested transfer could be an adverse employment action in a Title VII retaliation claim where the employee presented evidence showing that similar transfers for hardship reasons were so customary that they are a "privilege" of employment. See Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997). The Randlett court noted that the "terms, conditions, or privilege" language of § 2000e2-(a) is open-ended, citing Hishon v. King & Spalding, 467 U.S. 69, 75-76 (1984), in which the Supreme Court extended Title VII coverage to promotions to partner in a law firm. Id. at 862. It wrote, "we cannot accept the . . . view that a refusal to transfer is automatically outside Title VII." But see Burger v. Central Apartment Management, Inc., No. 98-10290, 1999 WL 101392,

-10-

at * 3-4 (5th Cir. Mar. 16, 1999) (holding that employer's refusal to grant an employee's request for a purely lateral transfer does not constitute an adverse employment action; applying "ultimate employment action" standard to definition of adverse action).

Consistent with our "case-by-case approach to determining whether a given employment action is 'adverse,'" Jeffries , 147 F.3d at 1232, we agree with the First Circuit's rejection of an automatic rule that a refusal to transfer is outside the scope of an "adverse employment action." See Randlett , 118 F.3d at 862. In particular, we note that it is well-established that a failure to promote constitutes an adverse employment action in a Title VII retaliation claim. See e.g., Burlington, 118 S. Ct. at 2268 (listing failure to promote as a tangible employment action); Kenworthy v. Conoco, Inc. , 979 F.2d 1462, 1469-70 (10th Cir. 1992); cf. Sprague v. Thorn Americas, Inc. , 129 F.3d 1355, 1362 (10th Cir. 1997) (describing elements of discriminatory failure to promote claim in sex discrimination case).

In the case at hand, Mr. Trujillo, whose job was classified as a "Psychologist III," was not selected for a Psychologist III opening at another facility. It is undisputed that this transfer would not have changed Mr. Trujillo's salary, benefits, or job classification. However, Mr. Trujillo's EEOC affidavit supports an inference that the transfer would have been the objective equivalent

to a promotion. He stated in his brief that the Los Lunas position would have given him the job title of Chief of Mental Health Program for the facility, and he averred in his EEOC affidavit that the job would have provided him with an opportunity to supervise employees and to direct a mental health program. See Appellant's Appendix at 84-85, 134. Indeed, defendant characterizes the Los Lunas vacancy as "a very important position." Appellee's Br. at 3. This significant increase in job responsibility and prestige, viewed in the light most favorable to Mr. Trujillo, suggests the transfer would have been equivalent to a promotion. Thus, under this circuit's liberal definition of "adverse employment action," the magistrate judge erred in holding that, as a matter of law, defendant's failure to select Mr. Trujillo for the Los Lunas Chief of Mental Health Services position was not an adverse employment action.

Because the magistrate judge concluded that Mr. Trujillo had not shown an adverse employment action, it did not reach the other elements of the McDonnell Douglas burden shifting analysis. Thus, we do not decide these issues.

B. Remaining Claims.

Mr. Trujillo asks us to decide the magistrate judge erred in not considering his claim that defendant's selection of a less-qualified Anglo female for the Los Lunas vacancy was a separate act of discrimination based on his national origin. See Reynolds v. School Dist. No. 1, Denver, Colo. , 69 F.3d 1523, 1534 (10th Cir.

1995) (holding that "plaintiff must typically show that he or she (1) belongs to a minority group; (2) was qualified for the promotion; (3) was not promoted; and (4) that the position remained open or was filled with a non-minority" to establish prima facie case of race discrimination for a failure to promote claim). Mr. Trujillo's 1995 EEOC complaint did not allege defendant's failure to transfer him constituted race discrimination. However, it appears from the record that the EEOC may have investigated such an allegation. The EEOC's "right to sue" letter includes the statement that "[e]vidence of record and witness testimony shows [Mr. Trujillo] was better qualified for the job vacancy [at Los Lunas] than the individual selected for the position." Appellant's Appendix at 112. The magistrate judge's order makes no mention of Mr. Trujillo's race discrimination claim. On remand, the district court should address this claim, including whether Mr. Trujillo exhausted his administrative remedies as to this charge. See Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 799 (10th Cir.) (holding that a plaintiff generally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge), cert. denied, 118 S. Ct. 342 (1997), and 29 C.F.R. § 1601.12(b) (providing that claims which (1) correct technical defects or omissions; (2) clarify or amplify allegations made in the original charge; or (3) add additional Title VII violations "related to or growing out of the subject matter

-13-

of the original charge" may relate back to the filing date of the original EEOC charge and, therefore, may be considered timely).

Mr. Trujillo also asks us to review the dismissal of his allegations of systemic retaliation after the filing of his 1995 EEOC complaint. He alleges this retaliation was in the form of withdrawn work assignments, reduced professional standing, and creation of a hostile working environment. We agree with the magistrate judge that Mr. Trujillo's only evidence consists of speculation and conclusory allegations, which is insufficient to withstand a properly supported summary judgment motion. See Elsken v. Network Multi-Family Sec. Corp., 49 F.3d 1470, 1476 (10th Cir. 1995). Because Mr. Trujillo based his constructive discharge claim on the allegedly hostile environment created by these unspecified retaliatory actions, we find no error in the magistrate judge's dismissal of this claim.

Finally, many of Mr. Trujillo's allegations of discrimination relate to his 1992 demotion. We agree with the magistrate judge that these claims of discrimination, which were the basis of his 1994 EEOC complaint and the EEOC's 1995 "right to sue" letter, are barred by the ninety-day limitation period. See 42 U.S.C. § 2000e-5(f)(1).

In summary, we REVERSE and REMAND the magistrate judge's dismissal of Mr. Trujillo's retaliation claim based on defendant's failure to select him for

-14-

the Los Lunas vacancy. On remand, we instruct the district court to address Mr. Trujillo's claim that the failure to select him for this vacancy also constituted racial discrimination. We AFFIRM the dismissal of Mr. Trujillo's remaining allegations of retaliatory action and his constructive discharge claim.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge