**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 20, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GIOVANNI LARATTA,

     Plaintiff - Appellant,

v.

SEAN FOSTER, Associate Warden,
Centennial Correctional Facility, in his
individual capacity; LYNN TRAVIS,
Correctional Officer Lieutenant, Centennial
Correctional Facility, in his individual
capacity; TINO HERRERA, Investigator,
Office of the Inspector General, in his
individual capacity; DENNIS BURBANK,
Administrative Services Manager,
Centennial Correctional Facility, in his
individual capacity; DALE BURKE,
Correctional Officer, Centennial
Correctional Facility, in his individual
capacity; RAEANNE WILL, Correctional
Officer, Centennial Correctional Facility,
in her individual capacity; RICK
RAEMISCH, Executive Director, Colorado
Department of Corrections, in his official
capacity; JAY KIRBY, Interim Inspector
General, Colorado Department of
Corrections, in his official capacity,

     Defendants - Appellees.

No. 16-1283
(D.C. No. 1:12-CV-02079-MSK-KMT)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding

(continued)

_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK** and **HOLMES**, Circuit Judges.
_____

Giovanni Laratta, a Colorado prison inmate, sued the defendants for retaliating against him after he submitted an administrative grievance. The case went to trial against Associate Warden Sean Foster, Investigator Tino Herrera, and Correctional Officer Lynn Travis. A jury returned a verdict in favor of the defendants. Laratta unsuccessfully sought post-judgment relief and now appeals. He challenges three jury instructions and the district court's requirement that he participate in the trial from prison. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

In February 2011, Laratta submitted a grievance claiming he had been "sexually harassed" by a female corrections officer who offered to send him "nude pictures of herself" and asked to see his "genitals." Aplt. App., Vol. VI at 1093. He claimed that when he rejected her advances, she gave him a negative "chron" for impermissibly placing "items on [his] in-cell computer kiosk." *Id.*, Vol. I at 22-23. "A chron is an informal mechanism of noting negative prisoner behavior that can have consequences for a prisoner's . . . conditions of confinement." *Id.* at 23.

Following an investigation, prison officials charged Laratta with violating the Code of Penal Discipline by reporting a false allegation against a corrections officer.

precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

A hearing officer found Laratta guilty of the offense and forfeited some of Laratta's privileges and good-time credits. A state court later ordered a new disciplinary hearing, however, and Laratta was found not guilty. Laratta then initiated this 42 U.S.C. § 1983 case, claiming he was prosecuted, convicted, and sanctioned "in retaliation for his lawful, good-faith grievance" in violation of the First Amendment. Aplt. App., Vol. I at 43.

At trial, Laratta participated by video conference and an open telephone line with his attorney. At the close of evidence, the district court instructed the jury that a First Amendment retaliation claim has three elements: (1) protected activity—i.e., Laratta's submission of a grievance; (2) a defendant's personal participation in the decision to charge and prosecute Laratta; and (3) a "[d]efendant [being] substantially motivated by the fact that Mr. Laratta had filed a grievance in deciding to charge him with false reporting." *Id.*, Vol. VI at 1084.

Over Laratta's objection, the district court instructed the jury that the substantial-motivation element turned on "the [d]efendant's intention" and could be gleaned from a number of discretionary factors:

> (i) the amount of time that passed between the [d]efendant learning of Mr. Laratta's grievance and the [d]efendant's decision to charge [him]; (ii) the amount of thought and care that the [d]efendant put into making the decision; (iii) the nature and completeness of the investigation that was conducted; (iv) the degree to which the evidence suggested that Mr. Laratta's statements in the grievance were actually false and the extent to which the evidence suggested that Mr. Laratta knew that the statements were false; (v) the degree to which you believe the [d]efendant acted in good faith or bad faith when deciding to bring the charges; and (vi) any other factors that you believe illustrate the [d]efendant's intention in deciding to charge Mr. Laratta with false reporting.

3

*Id.* at 1086.  The district court reasoned that the defendant's intention was necessary because, without it, "any disciplinary charge brought after an inmate files a grievance that either references the grievance or references the . . . content of the grievance" would "be unconstitutional[ ] . . . *per se*."  *Id.* at 1009.

The district court further instructed the jury not to consider anything that occurred after Laratta was charged with false reporting.  The court explained that the "ultimate question" was "whether the decision by any [d]efendant to <u>bring</u> those charges was retaliation for Mr. Laratta" filing a grievance.  *Id.* at 1087.

The jury returned a defense verdict and the district court entered judgment on March 3, 2016.  Twenty-eight days later, on March 31, Laratta moved under Federal Rule of Civil Procedure 59 for a new trial and to alter or amend the judgment, arguing that the district court's substantial-motivation instruction was erroneous.

On Friday, April 1, the district court denied the motion in a minute order, explaining that Laratta had not complied with Local Rule 7.1(a), which states:  "Before filing a motion, counsel for the moving party . . . shall confer or make reasonable good faith efforts to confer with any opposing counsel . . . to resolve any disputed matter.  The moving party shall describe in the motion, or in a certificate attached to the motion, the specific efforts to fulfill this duty."  D. Colo. L. Civ. R. 7.1(a).

On Monday, April 4, Laratta filed the motion again, this time with a Rule 7.1(a) conferral statement.  And on May 24, he moved for an extension of time to appeal from the judgment.

4

The district court denied both of Laratta's motions on July 5. It concluded that the substantial-motivation element of a retaliation claim should take into consideration whether "the <u>contents</u> of a[n] [inmate's] grievance reflect an independent act of misconduct (*e.g.*, threats, harassment)," and not just whether the inmate was disciplined for "the act of <u>filing</u> a grievance." Aplt. App., Vol. IV at 624. The district court next concluded—erroneously—that Laratta's appeal period expired on Sunday, April 3, and therefore, his extension motion was untimely as it had to have been filed by May 3. The district court did state, however, that it "would otherwise be inclined to grant Mr. Laratta a three-day extension of the deadline for filing a Notice of Appeal." *Id.* at 633.

Laratta filed his notice of appeal the next day, designating both the judgment on the jury's verdict and the order denying his renewed post-judgment motion.

## Discussion

### I. Appellate Jurisdiction

The defendants mistakenly assert that this court lacks jurisdiction to consider Laratta's appeal. We begin by noting that Laratta's timely March 31 motion for a new trial and to alter or amend the judgment tolled the time in which to appeal, and the 30-day appeals clock started running from the date the motion was denied—April 1st. *See* Fed. R. App. P. 4(a)(4)(A) (stating that "the time to file an appeal runs for all parties from the entry of the order disposing of" a timely post-judgment motion, such as a Rule 59 motion for a new trial or to alter or amend the judgment); Fed. R. Civ. P. 59 (requiring that motions for a new trial or to alter or amend the judgment be filed no later than 28 days after the judgment's entry). Thus, Laratta had until either (1) Monday, May 2nd,

5

to file a notice of appeal, *see* Fed. R. Civ. P. 6(a)(1) (stating that if the last day of a period falls on a weekend or a holiday, the period continues to run until the end of the next day that is not a weekend or holiday), or (2) June 1st to file a motion to extend the time to appeal, *see* Fed. R. App. P. 4(a)(5)(A)(i) (authorizing an extension if "a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires"). Laratta chose the latter route, timely filing a motion for an extension on May 24.

The district court would have granted that extension motion but for its (erroneous) calculation of the appellate period. The district court's error stemmed from its view that Laratta's March 31 motion was a nullity as it lacked a conferral statement. In adopting that view, the district court relied on *Allender v. Raytheon Aircraft Co.*, 439 F.3d 1236 (10th Cir. 2006). In *Allender*, this court held that the appellant's Rule 59 motion to alter or amend had no tolling effect because it lacked the general characteristics of a motion. Specifically, "[i]t did not provide a single ground for relief, let alone state the grounds for relief with reasonable specification." *Id.* at 1240 (internal quotation marks omitted).

But Laratta's March 31 motion had all the characteristics of a motion. *See* Fed. R. Civ. P. 7(b)(1) (indicating that motions must generally be in writing, "state with particularity the grounds for seeking the order," and "state the relief sought"). It simply lacked a conferral statement. The Federal Rules of Civil Procedure do not require a conferral statement as a component of a valid motion. Similarly, the Federal Rules of Appellate Procedure do not condition tolling on the presence of a conferral statement. Indeed, the requirement of a conferral statement is created by a local court rule and, as such, "must not be enforced in a way that causes a party to lose any right because of a

6

nonwillful failure to comply," Fed. R. Civ. P. 83(a)(2). Despite this admonishment,

Laratta lost his right to appeal directly from the judgment on the jury's verdict because of

the district court's far-reaching interpretation of the local conferral rule.[1]

The Ninth Circuit has expressly rejected the view that a conferral statement has

any tolling significance. *See Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 665-66 (9th Cir.

2003). And we do so now as well.

Because Laratta filed his notice of appeal within the time that the district court

would have extended the appeal period to had it not erroneously calculated the appeal

period, Laratta's appeal is timely. *See* Fed. R. App. P. 4(a)(5)(C) (authorizing an

extension up to "30 days after the prescribed time or 14 days after the date when the

order granting the motion is entered"). Accordingly, we proceed to consider Laratta's

appeal from the district court's March 3 judgment.

## II. Jury Instructions

### A. Substantial Motivation

"[P]rison officials may not retaliate against or harass an inmate because of the

inmate's exercise of his constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144

---

[1] We say "directly" because Laratta could have indirectly attacked the judgment by appealing the July 5 denial of his April 4 renewed postjudgment motion. That type of appeal, however, presents a more difficult standard of review to overcome. *See Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1296 n.3 (10th Cir. 2002) (indicating that abuse of discretion is the standard of review applicable to postjudgment reconsideration motions).

7

(10th Cir. 1998) (internal quotation marks omitted).  This proscription covers the filing of

administrative grievances.  *See Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991).

To establish a First Amendment retaliation claim, a prisoner must demonstrate

three elements:  "(1) that [he] was engaged in constitutionally protected activity; (2) that

the defendant's actions caused [him] to suffer an injury that would chill a person of

ordinary firmness from continuing to engage in that activity; and (3) that the defendant's

adverse action was *substantially motivated* as a response to [his] exercise of

constitutionally protected conduct."  *Shero v. City of Grove*, 510 F.3d 1196, 1203

(10th Cir. 2007) (emphasis added).

Laratta argues the district court erred in its jury instruction explaining the

substantial-motivation factor.  He contends that the court's explanation, using six

discretionary factors, "does not go to causation but rather [the] [d]efendants' state of

mind."  Aplt. Opening Br. at 15.  He complains he was required to meet a heightened

burden, rather than simple but-for causation.[2]

"We review de novo whether jury instructions, as a whole, correctly state the law

and provide the jury with an understanding of the issues."  *United States v. Little*,

___

[2] Laratta concedes he is not arguing a prisoner cannot constitutionally be
punished for submitting a false grievance.  *See* Aplt. Opening Br. at 17 ("assuming
the facial constitutionality of the False Reporting charge"); Reply Br. at 3 n.1 (stating
that whether "the First Amendment prohibits prison officials from punishing even
false speech . . . is not at issue in this appeal").  Indeed, he does not challenge the
jury instruction providing that the First Amendment does not protect a grievance that
is "frivolously made, knowingly false, or filed simply for the purpose of harassment."
Aplt. App., Vol. VI at 1085.

829 F.3d 1177, 1181 (10th Cir. 2016). We will reverse "only if we have substantial doubt that the jury was fairly guided." *Id.* (internal quotation marks omitted).

We agree with the district court that a defendant's state of mind is relevant to the substantial-motivation inquiry. After all, this inquiry focuses on why prison officials took adverse action against the prisoner. *See Worrell v. Henry*, 219 F.3d 1197, 1213 (10th Cir. 2000) (probing the defendant's motivation for taking adverse action); *Peterson*, 149 F.3d at 1144 (same). Indeed, in establishing the three-factor retaliation test employed by the district court, this court specifically stated that the test "focus[es] on the protected activity, the effect of the defendant's actions, *and the defendant's intent*." *Worrell*, 219 F.3d at 1213 (emphasis added).

Thus, if the defendants here perceived that Laratta submitted the grievance to harass the officer who imposed the negative chron, then the jury could have found the defendants were not substantially motivated to punish Laratta for the mere submission of a grievance. *Cf. Smith v. Nelson*, 618 F. App'x 436, 439 (10th Cir. 2015) (concluding that the district court properly dismissed prisoner's retaliation claim where he "presented nothing to suggest that [corrections officers] disciplined him as retaliation for his filing of a grievance—rather than due to their very real perception of his words as a threat").

Further, the district court provided six discretionary factors to assist the jury's substantial-motivation inquiry. Laratta purports to contest these factors, but he offers only perfunctory challenges to the factors as a whole, claiming they "did not accurately capture the nature of the 'substantially motivated' element" and provided only "a milieu of vague criteria." Aplt. Opening Br. at 15-16. "Th[is] court will not consider . . . issues

9

adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) (internal quotation marks omitted). In any event, we note the district court informed the jurors they could consider "any other factors" illustrative of the defendants' intent. Aplt. App., Vol. VI at 1086.[3]

In sum, the district court's substantial-motivation instruction fairly guided the jury.

**B. Excluding Evidence of Events After the False-Reporting Charge**

Laratta argues the district court erred by instructing the jury not to consider any events that occurred after the false-reporting charge. He complains that "had the district court not instructed the jury that it was prohibited from considering such evidence, [he] would have introduced evidence that" he succeeded in overturning the charge. Aplt. Opening Br. at 20. This argument is somewhat perplexing.

During trial, the district court provisionally excluded evidence of post-charge events, questioning "how an after-the-fact determination can be used to show that the bringing of the charge was not justified." Aplt. App., Vol. V at 754. Later in the trial, the district court invited Laratta "to lay a more detailed foundation that would demonstrate the relevance of the proffered evidence." *Id.*, Vol. VI at 1007. Laratta

---

[3] The factors did not, as Laratta claims in his reply brief, require the jurors to find the defendants acted with "ill will." Reply Br. at 4. Although one factor asked whether the defendants acted in good or bad faith, it did so in the context of the substantial-motivation inquiry, and there was no mention of good or bad faith in the instruction listing the elements the jury had to find for retaliation. Further, "issues raised by an appellant for the first time on appeal in a reply brief are generally deemed waived." *Wheeler v. Comm'r*, 521 F.3d 1289, 1291 (10th Cir. 2008).

10

chose, however, "not to lay further foundation and *abandoned* the proffered evidence." *Id.* (emphasis added). Consequently, the district court ruled that "[t]he curtain rises on the story on . . . the date on which Mr. Laratta filed his grievance . . . [a]nd that same curtain falls on or about [the date] when the false reporting charges were brought against Mr. Laratta." *Id.* The district court reasoned that, by the latter date, "the constitutional violation, if any, had been completed[,] [a]nd the events falling outside this time frame are of suspect relevance." *Id.* Then, when the district court was settling jury instructions, Laratta objected to the limiting instruction, stating "that it is relevant what happened after the false reporting charge was brought." *Id.*, Vol. V at 998.

Initially, Laratta seems to have waived his challenge to the instruction by abandoning at trial the evidence of post-charge events. Laratta does not address on appeal his decision to not pursue the evidence.

But even if the instructional challenge is not waived, we conclude that the district court did not abuse its discretion in removing from the jury's consideration any evidence of post-charge events. *See McCue v. Kan. Dep't of Human Res.*, 165 F.3d 784, 788 (10th Cir. 1999) ("We also review the district court's decision to limit or refusal to limit the scope of evidence for abuse of discretion."). The fact that Laratta was exonerated after a state court ordered a new hearing does not bear on the defendants' motivation for initially charging him. *See* Fed. R. Evid. 401 ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence[ ] and . . . the fact is of consequence in determining the action.").

11

## C. Personal Participation

Laratta argues the district court erred by instructing the jury it had to find each defendant "personally participated in the decision to charge and prosecute" him. Aplt. App., Vol. VI at 1084. He contends the instruction was too narrow and should have instead required the jury to find each defendant "took action to charge [him] with and convict [him] of a violation of the [Code of Penal Discipline]." Aplt. Opening Br. at 23. According to Laratta, his proposed instruction would have made Investigator Herrera liable for "set[ting] in motion a series of events that he knew or reasonably should have known would cause" Associate Warden Foster and Correctional Officer Travis to levy the false-reporting charge. *Id.* at 24.

In resolving this issue, we need not assess the degree to which the district court's personal-participation instruction would or would not have captured Herrera's liability for *setting in motion* events that culminated in the false-reporting charge. This is so, because at trial, Laratta's only concern was that the instruction covered both charging and convicting him. Aplt. App., Vol. V at 987. The defendants responded that the hearing officer who convicted Laratta was "not in this action." *Id.* at 988. Thus, the district court found the fact of conviction irrelevant. We conclude that the district court did not abuse its discretion in resolving the objection that was actually raised.[4]

---

[4] "When considering a party's challenge to jury instructions, our initial inquiry is whether the party properly preserved that issue for appeal by objecting at the district court level to the instruction on the same grounds raised on appeal." *Comcoa, Inc. v. NEC Tels., Inc.*, 931 F.2d 655, 660 (10th Cir. 1991). Unpreserved challenges are reviewed only for plain error. *See United States v. Bedford*, 536 F.3d 1148, 1153

(continued)

### III. Laratta's Remote Attendance at Trial

Finally, Laratta asserts the district court erred by not permitting him to personally attend the trial. He complains it was "more difficult" to communicate with counsel, and he speculates that the jury might not have been able to hear his videoconference testimony. Aplt. Opening Br. at 19. He points out that the jury, while deliberating, requested a transcript of his testimony.

A prisoner-plaintiff's "opportunity to appear before the court in support of his claim is a matter addressed to the court's discretion." *Perotti v. Quinones*, 790 F.3d 712, 721 (7th Cir. 2015). In exercising that discretion, the district court "must balance the prisoner's interest in being present physically in the courtroom and the government's interest in having him remain in his place of incarceration." *Id.* at 724. Balancing those interests requires a consideration of such factors as costs, security risks, and the impact of the prisoner's remote appearance on both his credibility and his ability to pursue his case. *See id.* at 721, 725.

In deciding that Laratta should appear remotely, the district court noted that (1) he "has a significant criminal record," which includes an aggravated-robbery conviction, Aplt. App., Vol. V at 663; (2) "he has had repetitive incidents with prison staff," *id.*; (3) the security and transportation costs for an estimated four-day trial would be high; and (4) video and telephonic means would allow meaningful participation. *Id.* at 666. We

---

(10th Cir. 2008). Because Laratta does not argue for the application of plain-error review, he has waived his argument that the personal-participation instruction fails to fully account for Investigator Herrera's liability. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011).

conclude that the district court's decision requiring Laratta to participate in his trial remotely was not "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 968 (10th Cir. 2001) (internal quotation marks omitted). The district court balanced the competing interests and made a reasoned decision. Although the jury requested a transcript of Laratta's testimony, that alone does not reveal they could not hear him. Jurors occasionally request transcripts of testimony even when a witness testifies in person. Moreover, the jury did not mention an audio problem when requesting a transcript.

In short, the district court did not abuse its discretion in requiring remote attendance.

## CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Jerome A. Holmes
Circuit Judge

14