**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80257**
**(303) 844-3157**

Patrick J.  Fisher, Jr.
Clerk

March 15, 2001

**TO:**   ALL RECIPIENTS OF THE ORDER AND JUDGMENT

**RE:**   Nos. 98-1150 and 98-1348, *Hall v. Claussen*
2001 WL 219088
Filed on March 6, 2001

On page one of the order and judgment, the case number for the cross-appeal should read 98-1348, not 98-1384.  A corrected copy of page one is attached.

Sincerely,
Patrick Fisher, Clerk of Court

By:
Keith Nelson
Deputy Clerk

encl.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 6 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROLAND HALL,

     Plaintiff-Appellee/Cross-Appellant,

v.

RIECKE CLAUSSEN, Mesa County
Sheriff,

     Defendant-Appellant/Cross-Appellee.

Nos. 98-1150, 98-1348

(D. C. No. 96-WY-1724-WD)
(D. Colo.)

**ORDER AND JUDGMENT***

Before **BRORBY**, **McWILLIAMS**, and **HENRY**, Circuit Judges.

Roland Hall filed this action alleging that his former employer, Mesa County,

Colorado Sheriff Riecke Claussen, violated the Americans with Disabilities Act (ADA),

42 U.S.C. §§ 12101-12213, by discriminating against him on the basis of a urological

condition and a psychological disorder (claustrophobia). Mr. Hall asserted that Sheriff

Claussen refused to select him for two positions because of his urological condition.

Then, he alleged, Sheriff Claussen failed to reasonably accommodate the urological

---

    * This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

condition and the claustrophobia by refusing to transfer him to a vacant investigator position and requiring him to work in the county detention facility instead. Finally, Mr. Hall maintained, Sheriff Claussen terminated his employment on the basis of his disabilities.

The district court concluded that Mr. Hall's claustrophobia was not a disability covered by the ADA. However, it submitted the claims regarding Mr. Hall's urological condition to a jury, which found that Sheriff Claussen had violated the ADA. The jury also awarded Mr. Hall $85,000 in compensatory damages and $225,000 in damages for loss of future earnings. The court granted Mr. Hall's motion for costs, although in an amount significantly less than he requested.

On appeal, Sheriff Claussen advances the following arguments: (1) the district court erred in submitting to the jury the question of whether Mr. Hall's urological condition constituted a disability under the ADA; (2) the district court erred in instructing the jury on Sheriff Claussen's duty to reasonably accommodate Mr. Hall's urological condition; (3) there is insufficient evidence to support the jury finding that Mr. Hall was disabled under the ADA; (4) there is insufficient evidence to support the jury finding that Sheriff Claussen failed to reasonably accommodate Mr. Hall by refusing to reassign him to a vacant position as an investigator; (5) Mr. Hall failed to establish that he was terminated because of his disability; (6) Sheriff Claussen was prejudiced by the district court's improper admission of several items of evidence; and (7) the district court erred

in failing to impose the $100,000 damages cap established by 42 U.S.C. § 1981a(b)(3). In a cross-appeal, Mr. Hall challenges the district court's award of a reduced amount of costs.

For the reasons set forth below, we conclude that the district court did not err in instructing the jury and that the evidence is sufficient to support the jury's findings that Sheriff Claussen violated the ADA. As to the damages issue, we conclude that cap set forth in 42 U.S.C. § 1981a(b)(3) does not apply to the $225,000 award to Mr. Hall because it constitutes front pay. However, we agree with Sheriff Claussen that the district court erred in submitting the issue of front pay to the jury. We therefore vacate the $225,000 award and remand the case to the district court for independent consideration of an award of front pay.

As to Mr. Hall's cross-appeal, we conclude that the district court erred in interpreting the applicable statutes governing expert witness fees in ADA cases. Therefore, we also remand the case to the district court for further consideration of an award of those costs. However, as to the other costs requested by Mr. Hall, we affirm the district court's decision.

## I.  BACKGROUND

3

Mr. Hall worked as a deputy sheriff in Mesa County, Colorado from 1979 through 1986 and from 1991 until 1995. During the latter period, he served as a patrol officer. In May 1994, he began to experience prostate problems. Urination became frequent (approximately every thirty to forty five minutes) and painful. After a physician diagnosed Mr. Hall as suffering from prostatitis and benign prostate hyperplasia, the Sheriff's Department placed Mr. Hall on medical leave.

Mr. Hall remained on medical leave until August 1994. When he returned to work, the Sheriff's Department temporarily assigned him to the investigations division. Mr. Hall introduced testimony indicating that, in spite of his prostate condition, he was able to perform all the functions of the investigator's job, including field work and stakeouts.

While assigned to the investigations division, Mr. Hall sought several jobs within the Department. In February 1995, he applied for a patrol sergeant position, and, in April, he applied for one of three investigator's positions. Mr. Hall submitted to examinations and interviews, but Sheriff Claussen selected him for neither job. At trial, Sheriff Claussen explained that these positions would have constituted promotions from Mr. Hall's job as a patrol deputy.

Mr. Hall then applied for a position in courthouse services, where he would have been required to guard prisoners during judicial proceedings. Sheriff Claussen also rejected that application, concluding that, in light of Mr. Hall's need for frequent access

to a restroom, he was not qualified for the job.

In late April 1995, Mr. Hall's supervisors informed him that, in August of that year, he would be assigned to a position in the county's detention facility. Mr. Hall objected to the assignment, and, on May 15, 1995, he sent a memorandum to Sheriff Claussen and other supervisory personnel stating that his urological condition prevented him from performing the duties of a patrol officer. He added that he could not perform the duties of position in the detention facility because he suffered from claustrophobia. Mr. Hall also expressed disappointment over his failure to obtain the positions for which he had applied and stated that he met the qualifications for each job.

On June 12, 1995, Mr. Hall sent Sheriff Claussen and his supervisors a second letter. Again he objected to reassignment to the detention facility, and he requested an assignment to one of two positions in the investigations division: a position that had been vacated by Ted Hartman or an investigator's position that was scheduled to be created on August 15, 1995.

Following the receipt of Mr. Hall's second letter, Department supervisors discussed with Mr. Hall the possibility of working as a service technician and a records clerk. Because both positions would have involved reductions in pay, Mr. Hall indicated that he was not interested. Mr. Hall then received a notice of a vacancy in community corrections. However, by the time that Mr. Hall received the notice, the stated application deadline had passed. Moreover, the hiring for the position was done by

county personnel outside the Sheriff's Department.

Mr. Hall continued to work in the investigations division through the summer. However, on August 15, 1995, he failed to report to his assigned position in the detention facility. Sheriff Claussen treated Mr. Hall's failure to report as a voluntary resignation of his position.

In July 1996, Mr. Hall filed the instant action, alleging violations of the ADA and the Age Discrimination in Employment Act, 29 U.S.C., §§ 621-634. The district court granted summary judgment to Sheriff Claussen on Mr. Hall's ADEA claim. On the ADA claims, the district court concluded that Mr. Hall's claustrophobia was not a protected disability under the ADA, but it concluded that the case should proceed to trial on the theory that Mr. Hall's urological condition was such a disability.

Before the jury, Mr. Hall asserted three violations of the ADA. First, he argued that Sheriff Claussen had discriminated against him on the basis of his urological condition in refusing to hire him for the patrol sergeant and investigator positions in February and April 1995. Second, he alleged that Sheriff Claussen had failed to reasonably accommodate his disability by reassigning him to a vacant position that he could perform, such as the positions in the investigations division that he requested in his June 1995 letter. Finally, Mr. Hall maintained that Sheriff Claussen terminated his employment in August 1995 because of his disability.

Following the presentation of the evidence, the district court addressed the

6

following special interrogatories to the jury: (1) "Do you find that the plaintiff . . . was an individual with a disability as defined in the court's instructions?" (2) "Do you find that the plaintiff . . . was 'otherwise qualified,' that is, with or without reasonable accommodation he was able to perform the essential functions of the position that he held or desired?" (3) "Do you find that plaintiff['s] . . . disability was a motivating factor in the Defendant's decision to terminate his employment, or in Defendant's decision to deny him a transfer or promotion" (4) "Do you find that Plaintiff . . . sustained damages as a direct result of Sheriff Claussen's discrimination?" Aplt's App. vol. I, at 121. The jury answered each of these questions affirmatively.

The special interrogatories then addressed Sheriff Claussen's efforts to accommodate Mr. Hall's disability. They asked whether the sheriff had "attempt[ed] in good faith to accommodate the disability of the plaintiff" and whether such accommodation "would have caused the Defendant undue hardship." Id. The jury answered both of these interrogatories negatively. It awarded $225,000 "as damages for future earnings" and $85,000 as "compensatory damages." Id.

In a post-verdict motion, Mr. Hall sought an award of costs.[1] The district court granted the motion, but for a substantially reduced amount.

---

[1] Mr. Hall also sought and obtained an award of attorneys' fees. However, that award is not at issue in this appeal.

## II. DISCUSSION

On appeal, Sheriff Claussen challenges the district court's disposition of each of Mr. Hall's ADA claims on a variety of grounds. He argues that the district court erred in submitting certain issues regarding Mr. Hall's alleged disability to the jury and that it erroneously instructed the jury on certain aspects of the ADA claims. He further contends that in light of deficiencies in the evidence presented to the jury—particularly as to Mr. Hall's claim that Sheriff Claussen violated the ADA by failing to reassign him to a vacant position—the district court erred in denying his motion for judgment as a matter of law. Sheriff Claussen also argues that the district court erred in admitting certain categories of evidence and that the prejudicial effect of this evidence warrants a new trial. Because Sheriff Claussen's arguments address the requirements for establishing an ADA violation, we begin with an overview of the ADA provisions at issue. Then we turn to the specific arguments raised by Sheriff Claussen in this appeal.

### A. Elements of Mr. Hall's ADA Claims

The ADA protects employees from discrimination on the basis of disability. See 42 U.S.C. § 12112(a). It defines a disability as "a physical or mental impairment that substantially limits one or more of [an individual's] major life activities"; "a record of such impairment"; or "being regarded as having such an impairment." 42 U.S.C. §

8

12102(2).

In light of this definition, the determination of whether an individual is protected by the ADA generally involves three inquiries: (1) determining whether the individual has an impairment; (2) identifying the activities the individual alleges to be affected by the impairment and determining whether they constitute " major life activities" under the ADA; and (3) determining whether the impairment substantially limits the major life activity. Doyal v. Oklahoma Heart, Inc., 213 F.3d 492, 495 (10th Cir. 2000) (citing Bragdon v. Abbott, 524 U.S. 624 (1998)).

If these inquiries establish that an individual has a protected disability, then he may prove an ADA discrimination claim by establishing two additional elements. First, he must demonstrate that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job he held or desired. Second, he must prove that the employer discriminated against him on the basis of his disability. Taylor v. Pepsi-Cola Co., 196 F.3d 1106, 1109 (10th Cir. 1999).

In a recent en banc decision, this circuit has addressed the issue of reasonable accommodation to a job that an employee desires. See Smith v. Midland Brake, Inc., 180 F.3d 1154 (10th Cir. 1999) (en banc). There, we held that, under the ADA, "a 'qualified individual with a disability' includes a disabled employee who desires and can perform with or without reasonable accommodation an available reassignment job within the company, though unable to perform his existing job." Smith, 180 F.3d at 1161.

9

In light of our holding in Smith, an employer's refusal to reassign an employee to a vacant, funded position (that is within the company and for which he is qualified) may engender an ADA claim for failure to reasonably accommodate him. In order to prevail on such a claim, the employee must establish that: (1) he has a disability, as defined by the ADA; (2) accommodation within the employee's existing job cannot reasonably be accomplished; (3) the employee requested accommodation by reassignment, which the employee may identify or which the employee may request the employer to identify through an interactive process; (4) the employee was qualified to perform the vacant job; and (5) the employee suffered injury. Taylor, 196 F.3d at 1110; Smith, 180 F.3d at 1179.

It should be noted, however, that there are significant limitations upon an employer's duty to reasonably accommodate a disabled employee through reassignment. As we explained in Smith, an employee must ordinarily initiate an interactive process with the employer by providing notice of his disability and any resulting limitations and expressing a desire for reassignment. Then, "both parties have an obligation to proceed in a reasonably interactive manner to determine whether the employee would be qualified, with or without reasonable accommodations, for another job within the company and, if so, to identify an appropriate reassignment opportunity if any is reasonably available." Smith, 180 F.3d at 1172 (emphasis added).

Moreover, the duty to reassign is limited to existing jobs within the company; "[i]t is not reasonable to require an employer to create a new job for the purpose of

reassigning an employee to that job." Id. at 1174. Also, the job in question must be vacant, although in this context "vacant" means not only positions that are currently vacant but also those positions that the employer reasonably expects will become vacant in the fairly immediate future. Id. at 1175. The disabled employee's right to reassignment does not entitle him to a promotion, and the position to which the employee is reassigned may be chosen by the employer rather than the employee. See id. at 1177 ("The ADA does not entitle an employee to a free-ranging or perpetual right to a new position within the company."). Thus, if the employee rejects an offer of reassignment that is consistent with an employer's duties of reasonable accommodation under the ADA, the employer is not required to offer additional reassignment.

Finally, the employer is not required to violate important business policies that would make it unreasonable to reassign an employee to a particular job. In Smith, we cited "a well-entrenched seniority system" as an example of such a policy. Id. at 1176.

### B. Submission to the Jury of Questions Concerning Mr. Hall's Disability

Sheriff Claussen contends that the district court committed reversible error by instructing the jury on one part of the ADA definition of a "disability"—what constitutes a major life activity. According to Sheriff Claussen, this issue is a legal one that should have been determined by the court rather than the jury. Whether an issue is one of law

for the court to determine is itself a question of law that we consider de novo. <u>United States v. Jackson</u>, 213 F.3d 1269, 1285 (10th Cir. 2000).

Sheriff Claussen's argument is based on our decision in <u>Poindexter v. Atchison, Topeka & Santa Fe Railway Co.</u>, 168 F.3d 1228 (l0th Cir.1999). There, the plaintiff alleged that panic attacks that prevented her from traveling from her home to her workplace constituted an ADA-protected disability. We reversed a jury verdict for the plaintiff because the trial court "neither found nor precisely articulated an impairment and major life activity that the impairment may have affected." <u>Poindexter</u>, 168 F.3d at 1231. Thus, the jury had no guidance as to what constituted major life activities, and we were unable to discern on appeal what possible major life activities had led the jury to find for the plaintiff. We based our ruling on the Supreme Court's decision in <u>Bragdon v. Abbott</u>, 524 U.S. 624 (1998). <u>See</u> <u>Poindexter</u>, 168 F.3d at 1230 ("Thus, the Court in <u>Bragdon</u> makes clear that whether a claimed affliction constitutes an impairment under the ADA and whether the identified endeavor constitutes a major life activity are determinations of law for the court to decide.").

The instant case is distinguishable from <u>Poindexter</u> in important respects. Here, the court's instructions provided the jury with specific examples of major life activities. <u>See</u> Aplt's App. vol. I, at 101 (defining disability as "a physical or mental impairment that substantially limits one of the major life activities of life, such as <u>caring for oneself, performing manual tasks, walking, seeing, hearing speaking, breathing, learning, or</u>

12

working") (emphasis added). These examples are taken from ADA and Rehabilitation Act regulations, see 45 C.F.R. § 84.3(j)(2)(ii); 28 C.F.R. § 41.31(b)(2), and Sheriff Claussen does not argue that any of the specific examples are improper or misleading descriptions of major life activities under the ADA. Moreover, at trial Mr. Hall offered evidence that his urological condition substantially limited one of the major life activities listed in the instructions—working. He testified as to his difficulties in performing the responsibilities of a patrol officer and contended that his condition would also limit the performance of his duties in the detention facility.

Thus, unlike the jury in Poindexter, the jury here received specific guidance "as to which endeavors it could properly consider as major activities in reaching its decision." Poindexter, 168 F.3d at 1231. Moreover, in contrast to Poindexter, the record here is not ambiguous as to the major life activity alleged to be limited by the plaintiff's disability. See id. at 1232 (noting that, "on the record before us, we cannot ascertain whether [the plaintiff] sufficiently presented the legal issues during the trial to the district court for the required analysis"). Because the district court properly informed the jury that working was a major life activity and because the trial record supports the inference that the jury relied on Mr. Hall's limitations in performing that activity in finding that he was disabled, we discern no error in the district court's approach.

13

C. Jury Instruction on Preferential Treatment

Sheriff Claussen argues that the district court erred in refusing to give a proposed jury instruction stating that the ADA does not require employers to give disabled employees preferential treatment in hiring and promotion decisions. We review the district court's failure to give a particular instruction for an abuse of discretion. See United States v. Voss, 82 F.3d 1521, 1529 (10th Cir.1996). In determining whether the court properly exercised that discretion, we examine the instructions as a whole, asking whether they sufficiently cover the issues in the case and focus on the facts presented by the evidence. Id.

Our review of the instructions indicates that, although the district court did not give the instruction proposed by Sheriff Claussen, it informed the jury of the correct legal principles concerning Mr. Hall's ADA claims. The instructions state that an employer is required to reasonably accommodate a disabled employee, that reasonable accommodation includes reassignment to a vacant position, and that an employer is not required to provide a reasonable accommodation that would impose an undue hardship on the employer. Aplt's App. vol. I, at 109. The instructions further state that the accommodation provided need not be "the 'best accommodation possible,' so long as it is sufficient to meet the job related needs of the individual being accommodated." Id. They also inform the jury that "[a]n employer is not required to promote a disabled employee as an accommodation, nor must an employer reassign the employee to an

14

occupied position nor must the employer create a new position to accommodate the disabled worker." Id. at 112. Accordingly, the court's instructions comport with the applicable principles regarding an employer's duty to reassign a disabled employee to a vacant position. See Smith, 180 F.3d at 1170-78 (discussing the scope of an employer's duty to reassign and concluding that an employer is not required to create a new position or promote the disabled employee in order to reasonably accommodate him).

Moreover, in light of our decision in Smith, the instruction proposed by Sheriff Claussen is not an accurate statement of the law. As we noted in Smith, there are instances in which a disabled employee who is qualified for a vacant position is entitled to reassignment even though he may not be able to establish that he is the most qualified person whom the employer could have selected. See Smith, 180 F.3d at 1167 (noting that, "[i]f a disabled employee had only a right to require the employer to consider his application for reassignment but had no right to reassignment itself . . . then this promise within the ADA would be empty"). Sheriff Claussen's proposed instruction does not adequately inform the jury of this principle.

In light of court's proper explanation of the scope of the duty to reassign, we are also not persuaded by Sheriff Claussen's contention that a statement in Mr. Hall's attorney's closing argument, combined with the court's refusal to give the proposed instruction, unfairly prejudiced his defense. Sheriff Claussen cites the attorney's statement that "the test is not whether [Mr. Hall] was the most qualified but whether he

15

was qualified. He wasn't the most qualified but that's not what the law requires." Aplt's Br. at 48-49 (quoting Aplt's App. vol. II, at 498-99). However, after Sheriff Claussen objected, the court informed the jury that it should apply the law as stated in the jury instructions rather than as stated by the lawyers. Because those jury instructions, taken as a whole, properly explained the scope of an employer's duties to a disabled employee, we conclude that the district court did not abuse its discretion in failing to give the requested instruction.

### D. Evidence that Mr. Hall was a qualified person with a disability

Sheriff Claussen contends that the district court erred in denying his motion for judgment as a matter of law on the grounds that Mr. Hall failed to introduce sufficient evidence to demonstrate that he was a "qualified person with a disability" under the ADA. He argues that Mr. Hall's evidence was deficient in two respects: (1) he failed to demonstrate that he was substantially impaired in a major life activity; and (2) he failed to demonstrate that he was qualified to perform the essential functions of his job as a patrol officer. Here, we engage in de novo review, applying the same standards as the district court pursuant to Fed. R. Civ. P. 50. Judgment as a matter of law is appropriate "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." Finley v. United States, 82 F.3d 966, 968 (10th Cir.1997) (quotation marks and citation omitted). We construe the record in

16

the light most favorable to Mr. Hall, the nonmoving party.  See id.


1.  Impairment of major life activity (working).

The first of these challenges—to Mr. Hall's evidence that he suffered an impairment of a major life activity—is based upon the principle that "'[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.'"  Sutton v. United Air Lines, Inc., 130 F.3d 893, 904 (10th Cir.1997) (quoting 29 C.F.R. § 1630.2(j)(3)(i)).  Instead, "in order  [t]o demonstrate that an impairment 'substantially limits' the major life activity of working, an individual must show significant[ ] restrict[ion] in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  Bolton v. Scrivner, Inc., 36 F.3d 939, 942-43 (10th Cir.1994) (quoting  29 C.F.R. § 1630.2(j)(3)(i)).

EEOC regulations provide definitions of the relevant terms.  They state that a "class of jobs"  includes "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities."  29 C.F.R. § 1630.2(j)(3)(ii)(B).  A broad range of jobs includes "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities."  29 C.F.R. § 1630.2(j)(3)(ii)(C); see also Bolton,

17

36 F.3d at 942 (discussing definitions).

The regulations also list three factors that "should be considered" in determining whether an impairment substantially limits a major life activity and three factors that "may be considered" in making that determination. The three factors that should be considered are: "[t]he nature and severity of the impairment"; (ii) "[t]he duration or expected duration of the impairment"; and (iii) "[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). The three additional factors that "may be considered" are: (1) "[t]he geographical area to which the individual has reasonable access"; (2) "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment"; and (3) "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." 29 C.F.R. § 1630.2(j)(3)(ii).

Here, Sheriff Claussen himself argued that Mr. Hall's disability significantly restricted his ability to perform several jobs in law enforcement. In particular, Sheriff Claussen contended that Mr. Hall's disability rendered him unqualified for the position of patrol officer and presented evidence in support of that contention. When Mr. Hall

18

inquired about a position in courthouse services, Sheriff Claussen informed him that his need to make frequent visits to the bathroom disqualified him from consideration for that position. Additionally, Sheriff Claussen contended that Mr. Hall could not perform the regular duties required of an investigator, although Mr. Hall did offer evidence to rebut that contention. According to a May 18, 1995 memorandum from Captain Gardner to Mr. Hall, the Sheriff's Department's view was that Mr. Hall "cannot be placed in any position of employment where [he] [did] not have immediate access to toilet facilities." Aple's App. vol. II, at 381.

Mr. Hall also presented evidence to the jury regarding the severity, duration, and impact of his impairment. In June 1994, the physician who examined him concluded that he was suffering from chronic prostatitis that had been aggravated by the stress and activity level involved in a patrol deputy's job. That physician recommended long-term antibiotic therapy and reduced physical activity. Over a year later, a second physician examined Mr. Hall and concluded that he had "a urological problem that [was] responsible for him needing to void very frequently and it comes on rather precipitously." Id. at 392. Accordingly, this physician concluded that "there [was] a substantial need to have . . . immediate access to a restroom facility." Id. The same physician examined Mr. Hall during the following month. He reported to the Sheriff's Department that Mr. Hall continued to suffer from "rather precipitous urinary urgency over which he has no control." Id. at 394. He characterized Mr. Hall's problems as

19

"very legitimate and very unusual."  Id.

Viewing the record in the light most favorable to Mr. Hall, we conclude that the evidence is sufficient to support his contention that his urological condition substantially impaired the major life activity of working, as that term is defined under the ADA. Based on Sheriff Claussen's own arguments, a jury could have reasonably concluded that there was a broad range of jobs in law enforcement that could not be performed adequately if one required frequent and immediate access to a bathroom, as Mr. Hall did. Thus, the district court properly denied Sheriff Claussen's motion for judgment as a matter of law on this basis.

2.  Ability to perform patrol officer duties

Sheriff Claussen also contends that Mr. Hall failed to establish that he was capable of performing the duties of a patrol officer.  As a result, he contends, the jury could not have reasonably inferred that he was "a qualified person with a disability" under 42 U.S.C. § 12111(8).

Sheriff Claussen advanced this argument prior to the issuance of our en banc opinion in Smith, and his position is foreclosed by our ruling there. See Smith, 180 F.3d at 1170-78.  Following Smith, an employee may establish that he is a qualified individual with a disability if he is qualified to perform "with or without reasonable accommodation an available reassignment job within the company, though unable to

perform his or her existing job." Id. at 1161. Thus, a jury could infer that Mr. Hall was "a qualified individual with a disability" not only if he was qualified to perform the patrol officer position in which he had served in the past but also if he was qualified to perform a vacant position to which he requested reassignment. See id. Here, Mr. Hall requested reassignment to an investigator's position.

As the district court noted in denying Sheriff Claussen's motion for judgment as a matter of law, the evidence was disputed as to whether Mr. Hall could adequately perform the investigator's job. However, a reasonable jury could have accepted Mr. Hall's evidence on this point, finding him to be a qualified individual with a disability because he could perform an investigator's job but not a patrol officer's. Accordingly, the district court properly rejected Sheriff Claussen's argument that Mr. Hall was not a qualified individual with a disability.[2]

E. Reasonable Accommodation Claim

Sheriff Claussen challenges the district court's disposition of Mr. Hall's reasonable accommodation claim on two grounds. First, he contends that both the patrol sergeant and investigator positions would have constituted promotions for Mr. Hall

_____

[2] As discussed below, there were also factual disputes about whether there was an opening in the investigations division and whether such a position would have constituted a promotion for Mr. Hall. However, a reasonable jury could have accepted Mr. Hall's evidence on both of those points.

21

(from his prior job as a patrol officer), and that, as a result, the Sheriff's Department was not required to reasonably accommodate him by promoting him to one of those positions. Second, Sheriff Claussen contends that Mr. Hall unreasonably refused reassignment to a number of positions —as an officer in the detention facility, a service technician in the records division, a clerk in the records department, and as a community corrections officer. In light of Mr. Hall's refusal of these positions, Sheriff Claussen maintains, Mr. Hall is foreclosed from asserting a failure-to-reassign claim under the ADA. Because Sheriff Claussen raised these issues in a motion for judgment as a matter of law, we engage in de novo review of the court's decision, applying the same standards under Fed. R. Civ. P. 50. See Finley, 82 F.3d at 968. Sheriff Claussen's arguments require us to apply the principles regarding ADA failure-to-reassign claims that we set forth in Smith, 180 F.3d at 1160-80.

Pursuant to Smith, we note that it was not until May 1995, at the earliest, that Mr. Hall's complaints could have been reasonably interpreted as a request for reassignment as a reasonable accommodation under the ADA. Prior to that time, he had notified the Sheriff's Department of his urological condition, and the Department had responded by placing him on a temporary light duty assignment in the investigations division. However, Mr. Hall had not informed the Department that he was requesting permanent reassignment because he could no longer perform the duties of the patrol officer's job. Thus, when Mr. Hall applied for the patrol sergeant and investigator positions in

22

February and April 1995, the Department properly viewed his applications as requests to be hired for other jobs but not as requests to be reasonably accommodated by reassignment to a vacant position, as required by the ADA. Although Mr. Hall was certainly entitled to challenge the Department's failure to select Mr. Hall for either of these positions—by arguing that the Department did not select him because of his disability— these decisions are not implicated in Mr. Hall's failure-to-reassign claim.

Instead, the failure-to-reassign claim implicates the Sheriff Department's actions after Mr. Hall requested reassignment. We therefore assess Sheriff Claussen's challenges to the district court's denial of his motion for judgment as a matter of law on his failure-to-reassign claim by considering the evidence presented regarding the period from May 1995 until the termination of his employment in August 1995.

### 1. Positions Constituting Promotions

In Smith, we concluded that, in satisfying its duty to reasonably accommodate a disabled employee through reassignment, an employer is not required to consider positions that are promotions. 180 F.3d at 1176-77. Here, Sheriff Claussen contends that this limitation on the duty to offer reassignment is applicable because the investigator position that Mr. Hall sought in May 1995 constituted a promotion.

From the record provided to us by counsel, the evidence on this point appears conflicting. On the one hand, Sheriff Claussen testified on direct examination that the

23

position of criminal investigator constituted a promotion from patrol deputy. See Aplt's App. vol. II, at 454-455. However, on cross examination, Sheriff Claussen explained that there were different kinds of investigators: "core investigators" (who did receive higher pay than patrol officers) and "rotational positions," filled by patrol officers who rotated through the investigations division and did not receive higher pay. See Aple's App. vol. II, at 320. Moreover, as to four positions in the investigations division that the Department filled in 1995, Sheriff Claussen stated that he did not believe that they were "core positions." Id. at 320-21. He also stated that the investigator positions for which Mr. Hall applied paid the same as the position in the detention facility. See id. at 326.

The evidence also appears conflicting as to whether such a "rotational position" was actually available after Mr. Hall sought reassignment in May 1995. Under Smith, the vacant positions to which an employer must consider reassignment include "not only positions that are at the moment vacant but also . . . positions that the employer reasonably anticipates will become vacant in the fairly immediate future." Smith, 180 F.3d at 1175. As to this issue, Sheriff Claussen's testimony on direct examination indicates that, at the time of Mr. Hall's request for reassignment, the three investigator positions for which Mr. Hall had applied in April 1995 had already been filled. Moreover, Sheriff Claussen points to testimony that a fourth investigator position (one held by Ted Hartman) did not become available until September 1995, when he terminated Mr. Hartman's employment. See Aplt's Reply Br. at 12. However, Mr. Hall

refers to testimony on cross-examination in which Sheriff Claussen appears to acknowledge that there was a "rotational position" that was filled around August 1995. See Aple's App. vol. II, at 320. Moreover, testimony from Captain Gardner on cross-examination indicated that there was yet another opening in 1995 for an investigator in the narcotics unit. See id. at 348-49.

Viewing this evidence in the light most favorable to Mr. Hall, a reasonable jury could conclude that, after Mr. Hall's May 1995 request, there was a position in the investigations division to which Mr. Hall could have been reassigned without being promoted. Thus, the district court did not err in denying Sheriff Claussen's motion for judgment as a matter of law on that issue.

## 2. Refusal of Reassignment Offers

Sheriff Claussen also invokes Mr. Hall's refusal of the offers of reassignment to positions as a service technician, records clerk, community corrections officer, and detentions officer. Because Mr. Hall either did not express an interest in these positions or, in the case of the detentions position, refused to report to the job, Sheriff Claussen maintains that he cannot now pursue a claim for breach of the duty to reasonably accommodate his disability.

Under Smith, an employer must first consider lateral moves to positions that are

regarded as equivalent. Smith, 180 F.3d at 1177. Only if there are no such positions available may an employer consider positions that constitute a demotion. Moreover, the duty to reassign under the ADA is limited to jobs "within the company." Id. at 1174 (emphasis added). Those limitations on an employer's duty to reassign foreclose Sheriff Claussen's challenges based on the first three positions. In particular, it is uncontroverted that reassigning Mr. Hall to the service technician and records clerk jobs would have required him to have accepted reductions in pay. Thus, if a lateral position was available, Sheriff Claussen could not have satisfied his duty to reassign by offering Mr. Hall a position involving a reduction in pay. As to the community corrections position, it is uncontroverted that the hiring for that position was done outside the Sheriff's Department. Thus, informing Mr. Hall of a position available outside the Department was also insufficient to satisfy its duty to reasonably accommodate him through reassignment.[3]

That leaves the position in the detentions facility. As to that position, Sheriff Claussen argues that, because the district court ruled that Mr. Hall's claustrophobia did not constitute a disability under the ADA, the Department was not required to reasonably accommodate it. Thus, according to Sheriff Claussen, when Mr. Hall refused to report to the detentions facility because of his claustrophobia, the Department's duty to reasonably

---

[3] Mr. Hall also testified that the Department did not notify him of the vacancy in community corrections until after the posted deadline had passed.

accommodate him ended.  See Smith, 180 F.3d at 1177 (stating that once an employer has offered a reassignment that comports with the ADA, "its duties have been discharged").[4]

Sheriff Claussen's argument requires us to consider the evidence presented to the jury concerning whether he acted reasonably under the circumstances.  "Everything that an employer must do in terms of a reassignment is modified by the adjective [']reasonable['], just as that term modifies any other accommodation required by the employer under the ADA." Id. at 1171.   In assessing a claim for breach of the duty to reassign, the question is what is reasonable under particular circumstances. Id.  "What is 'reasonable' . . .  has a heavy factual component." Id. at 1178.

In the context of alleged breaches of an employer's duty to reassign, several circuits have concluded that the nature of the vacant position offered to the disabled employee may raise fact questions about the reasonableness of the employer's offer.  For example, in Rehling v. City of Chicago, 207 F.3d 1009, 1014-15 (7th Cir. 2000), the court concluded that, even though a disabled police officer was not entitled to reassignment to a particular division, the employer's failure to honor the request for a particular reassignment could be relevant to the determination of whether the employer had acted reasonably.  Similarly, in Norville v. Staten Island University Hospital, 196

---

[4] As noted above, the district court ruled that Mr. Hall's claustrophobia did not constitute a disability under the ADA.  Mr. Hall has not challenged that ruling, and we therefore accept it for purposes of this appeal.

27

F.3d 89, 98-101 (2d Cir. 1999), the court concluded that there were factual disputes as to whether the positions offered by the employer were not "comparable" because they involved either a significant cut in salary or benefits or a significant loss of seniority. The Second Circuit's definition of a position that would not be "comparable" is worth noting: "a position that would involve a significant diminution in salary, benefits, seniority or other advantages that she possessed in her former job." Id. at 99 (emphasis added).

The parties have not identified, nor have we found, any decisions that address the particular question that confronts us here: whether a disorder such as Mr. Hall's claustrophobia, one that the court has ruled is not a disability protected by the ADA, may nevertheless be relevant, in certain limited circumstances, in determining whether an employer has acted reasonably in satisfying its duty to offer reassignment. In our view, the decisions of the Seventh and Second Circuits in Rehling and Norville, as well as our analysis in Smith, suggest that such a disorder may be relevant when: (1) an employee has a disability as defined by the ADA and accommodation within his existing job cannot be reasonably accomplished; (2) the employee has another disorder that is not protected by the ADA but that nevertheless renders him unqualified for certain vacant positions within the company; (3) the employee requests reassignment; (4) the employer has more than one vacant position; and (5) rather than offering reassignment to a vacant position for which the employee is qualified, the employer only offers reassignment to a position

28

that the employee is not qualified to perform because of his unprotected disorder. In that limited situation, an employer's refusal to offer reassignment to a vacant position for which the disabled employee is qualified may raise a factual question as to whether the employer's conduct was reasonable.

Here, there is evidence in the record to support Mr. Hall's contention that he suffered from claustrophobia and that this disorder, if untreated, rendered him unqualified for the job in the detention facility. In particular, on June 1, 1995, Mr. Hall's physician wrote a letter to the Department stating that "[h]istorically, [Mr. Hall] has had significant difficulties working in the jail environment because of a rather marked claustrophobia" and requesting reconsideration of the proposed reassignment. Aple. App vol. II, at 374. Moreover, at trial Mr. Hall offered expert testimony from a psychiatrist who had evaluated him. The psychiatrist stated that Mr. Hall suffered from a moderate to severe type of claustrophobia involving a fear of closed spaces without ready access to escape. He reported that in such situations, Mr. Hall experienced rapid breathing and a rapid heart rate and that these symptoms had appeared in situations such as going to movies and attending his children's plays. According to the psychiatrist, Mr. Hall's claustrophobia could be treated with an exposure-based method, one in which there was a gradual exposure to the feared situation until the patient could master it. However, one could not "just throw a person into the most feared situation and expect the person to function competently in that circumstance." Aple's App. vol. I, at 154. Thus, the failure

29

to report to a job such as the one in the detentions facility was consistent with the psychiatrist's diagnosis of Mr. Hall.

Significantly, Sheriff Claussen does not challenge the psychiatrist's conclusion that Mr. Hall could not competently perform the duties of the detentions facility position if he was "just throw[n] into [it]." See id. Moreover, there is evidence in that record indicating that the Department followed such a course of action: requiring Mr. Hall to report to the detentions facility in August 1995 and immediately terminating his employment when he did not appear. This evidence, combined with the evidence indicating that there was a vacant position in the investigations division that did not trigger Mr. Hall's claustrophobia and that Sheriff Claussen did not offer to Mr. Hall, was sufficient for the jury to conclude that Sheriff Claussen did not reasonably accommodate Mr. Hall in the manner required by the ADA. Therefore, the district court properly denied Sheriff Claussen's motion for judgment as a matter of law on this issue.

### F. Evidence of Discrimination in Termination Decision

Sheriff Claussen argues that the district court erred in denying his motion for judgment as a matter of law because Mr. Hall offered insufficient evidence for a reasonable jury to conclude that he was terminated because of his disability. He notes that, prior to trial, the district court granted summary judgment on Mr. Hall's age discrimination claim on that basis, concluding that Sheriff Claussen had met his burden

of advancing a legitimate basis for the termination of his employment and that Mr. Hall had failed to offer evidence that the real reason for his termination was his age.

Under the ADA, in order to establish a prima facie case of discrimination in the termination of employment a plaintiff must show that: (1) he is a disabled person under the ADA; (2) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job; and (3) the employer terminated him because of his disability. White v. York Int'l Corp., 45 F.3d 357, 360-61 (10th Cir.1995). If an ADA plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. See Hardy v. S.F. Phosphates Ltd., 185 F.3d 1076, 1079 (10th Cir. 1999). If it does so, the burden returns to the plaintiff to present evidence that the proffered reason is not worthy of belief. See id. at 1079-80.

Under this standard, we are not convinced by Sheriff Claussen's argument that there was insufficient evidence to support Mr. Hall's claim that he was terminated because of his disability. The fact that there was insufficient evidence of age discrimination does not establish that Sheriff Claussen complied with the ADA in terminating Mr. Hall's employment. Moreover, as noted above, the record contains evidence from which a reasonable jury could conclude the following: that, when informed of Mr. Hall's urological condition, Sheriff Claussen refused Mr. Hall's request for reassignment to a vacant investigator position that Mr. Hall was qualified to perform; that, rather than making that reassignment, Sheriff Claussen required Mr. Hall to report

31

to a vacant position that he was not qualified to perform because of a disorder (claustrophobia) that, although legitimate, had been determined not to be covered by the ADA; and that, when Mr. Hall failed to report to the new position, Sheriff Claussen terminated his employment. The record thus supports the inference that the reason offered by Sheriff Claussen for terminating Mr. Hall's employment—his failure to report for the detention facility position—was a pretext for discrimination on the basis of his urological condition. See Kells v. Sinclair Buick-GMC Truck, 210 F.3d 827, 834 (8th Cir. 2000) (concluding that "failing to provide an employee with reasonable accommodations can tend to prove that the employer also acted adversely against the employee because of the individual's disability"). Accordingly, Sheriff Claussen is not entitled to judgment as a matter of law.

G.. Evidentiary Objections

Sheriff Claussen advances several challenges to the district court's evidentiary rulings, arguing that it improperly admitted evidence that prejudiced the jury. We review the district court's rulings for an abuse of discretion. See Cartier v. Jackson, 59 F.3d 1046, 1049 (10th Cir. 1995). We will not disturb the district court's determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment. See Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 727 (10th Cir. 1993) (quoting Cooter & Gell v.

32

Hartmarx Corp., 496 U.S. 384, 405 (1990)). "In order to reverse a district court judgment on account of an evidentiary ruling, [plaintiff] must make a clear showing [ ]he suffered prejudice, and the ruling was inconsistent with substantial justice or affected [his] substantial rights." Coletti v. Cudd Pressure Control, 165 F.3d 767, 773 (10th Cir. 1999) (quotations omitted).

1. Applications for positions before May 1995

Sheriff Claussen contends that the district court erred in allowing Mr. Hall to present evidence concerning the Department's decision to hire other individuals for the patrol sergeant and investigator positions in February and April 1995. He maintains that, because Mr. Hall did not inform the Department of his disability until May 1995, the Department did not know that he was seeking protection under the ADA until that time and that, as a result, its prior hiring decisions are not relevant to Mr. Hall's claims.

Sheriff Claussen's argument ignores the fact that Mr. Hall asserted several distinct challenges to the Department's employment practices. As noted above, he not only challenged the termination of his employment in August 1995 but also asserted that it was because of his disability that Sheriff Claussen did not select him for the patrol sergeant and investigator positions for which he applied. Although it is true that at the time he applied for these positions, Mr. Hall had not formally requested reassignment as a reasonable accommodation under the ADA, that fact does not establish that Sheriff

33

Claussen did not then know that he had a disability. In fact, in the summer of 1994, Mr. Hall had been evaluated by a physician who diagnosed a urological condition and who notified the Department of his findings. In response to those findings, the Department had placed Mr. Hall on light duty. Indeed, the parties stipulated at trial that "Mr. Hall was regarded by Sheriff Clausen as having a medically documented urological condition during the 1994-1995 time frame." Aplt's App. vol. II, at 496; Aple's App. vol. II, at 370.

Under the ADA, an impairment that substantially limits a major life activity may constitute a disability if it is "expected to persist on a long-term basis because its anticipated duration was indefinite, unknowable, or was expected to be at least several months." Aldrich v. Boeing, 146 F.3d 1265, 1270 (10th Cir. 1998). The evidence in the record is sufficient for a reasonable jury to conclude that, in February and April 1995, Sheriff Claussen knew that Mr. Hall's urological condition constituted a disability. Thus, the district court did not err in admitting evidence regarding the Department's decision to hire other individuals for the patrol sergeant and investigator positions.

2. Mr. Hall's Claustrophobia

Sheriff Claussen argues that the district court erred in admitting evidence of Mr. Hall's claustrophobia because that disorder is not protected by the ADA. This argument is foreclosed by our ruling that Mr. Hall's claustrophobia, even if it was not a protected

34

disability under the ADA, was nevertheless relevant to the determination of whether Sheriff Claussen failed to reasonably accommodate Mr. Hall by reassigning him to the position in the detention facility rather than by reassigning him to a vacant investigator position. Thus, the district court properly admitted this evidence.

3. Discrimination Against Other Employees

Sheriff Claussen argues that the district court erred in allowing testimony that three other Sheriff's Department employees suffered disability discrimination. This court has stated that "[a]s a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent." Spulak v. K-Mart Corp., 894 F.2d 1150, 1156 (10th Cir. 1990). However, the plaintiff must demonstrate the relevance of evidence regarding other employees by showing that the evidence can "'logically or reasonably be tied to the decision to terminate [the plaintiff].'" Id. at 1156 (quoting Schrand v. Federal Pac. Elec. Co., 851 F.2d 152, 156 (6th Cir. 1988)). Even if the evidence is relevant, the trial court may still exclude it if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or undue delay. Curtis v. Oklahoma City Public Schools, 147 F.3d 1200, 1217 (10th Cir. 1998).

Here, the first of these other instances of alleged discrimination involved a witness's testimony that he overheard statements by Sheriff's Department supervisors

that they had to get rid of an employee with physical impairments. A second employee testified that the Sheriff's Department did not assist him in efforts to keep his job in spite of his physical problems. After hearing this testimony, the court gave a limiting instruction explaining to the jury that evidence of discrimination against this employee did not directly prove any elements of Mr. Hall's claims but rather had been offered to show that the reasons provided by Sheriff Claussen to justify his actions were pretextual. Finally, a third employee testified that he thought the Department terminated his employment because of his age and his weight. The record provided to us by Sheriiff Claussen does not indicate that he objected to the third employee's testimony.

In our view, the district court did not abuse its discretion in admitting testimony as to the first two employees. Because these instances of alleged discrimination were sufficiently similar to those alleged by Mr. Hall, it was proper to allow the jury to consider them. Although the discrimination alleged by the third employee is of questionable relevance to Mr. Hall's ADA claims, it was not plain error for the district court to have admitted it. See Polys v. Trans-Colorado Airlines, Inc., 941 F.2d 1404, 1408 (10th Cir. 1991) (noting that, in the absence of a contemporaneous objection to the admission of evidence, we review only for plain errors—those that "seriously affect the fairness, integrity or public reputation of judicial proceedings") (internal citations and quotations omitted). More importantly, Sheriff Claussen has failed to demonstrate that the admission of any of this evidence affected the result of the trial.

36

4.  Improper Impeachment of Captain Gardner

Sheriff Claussen objects to the district court's allowing Mr. Hall to ask a witness (Lieutenant Don Williams) on direct examination about the reputation for untruthfulness of Captain William Gardner, a Sheriff's Department supervisor.  At the time of the direct examination, Captain Gardner had not yet testified.  Sheriff Claussen invokes our decision in Creekmore v. Crossno, 259 F.2d 697, 698-99 (10th Cir. 1958).  There, we held that the district court erred in allowing one witness to testify about a second witness's poor reputation for truthfulness before the second witness had testified.  See id. at 698.  ("The difficulty is that the impeaching evidence was received before the witness had testified.  The credibility of [the second witness] was neither relevant nor material until he testified as to some material fact.").

In denying Sheriff Claussen's motion for a new trial, the district court concluded that it had been improper to admit the evidence about Captain Gardner's reputation before he had testified.  However, the court further concluded that the evidence did not prejudice Sheriff Claussen. It noted that it had afforded Sheriff Claussen ample opportunity to challenge Lieutenant Williams's testimony about Captain Gardner through cross-examination of Lieutenant Williams and direct examination of Captain Gardner.

We agree with the district court's ultimate conclusion on this issue.  Sheriff Claussen has failed to establish that the impeachment of Captain Gardner through

37

Lieutenant Williams prejudiced his substantial rights.

### 5. Evidence Regarding Constructive Discharge

In a final evidentiary challenge, Sheriff Claussen contends that the district court erred in admitting evidence regarding Mr. Hall's allegations of constructive discharge. He notes that Mr. Hall did not specifically allege a constructive discharge in his complaint.

Sheriff Claussen's argument is not supported by the record. As he acknowledges, Mr. Hall did allege that the termination of his employment violated the ADA and that Sheriff Claussen had failed to reasonably accommodate him. Although Mr. Hall's complaint did not use the phrase "constructive discharge," Sheriff Claussen had sufficient notice that Mr. Hall was challenging the circumstances surrounding the termination of his employment. The evidence concerning the termination of Mr. Hall's employment was relevant to Mr. Hall's ADA claims, and the district court did not err in admitting it.

### H. 42 U.S.C. § 1981a(b)(3) Damages Cap

After the jury returned its verdict, Sheriff Claussen filed a motion for reconsideration, arguing that the award of "damages for future earnings," see Aplt's App.

vol. I, at 121, should be reduced pursuant to 42 U.S.C. § 1981a(b)(3).[5] As to entities that

employ more than 100 but fewer than 201 employees, that statute provides:

> The sum of the amount of compensatory damages awarded
> under this section for future pecuniary losses, emotional pain,
> suffering, inconvenience, mental anguish, loss of enjoyment of
> life, and other nonpecuniary losses, and the amount of punitive
> damages awarded under this section . . . shall not exceed . . .
> $100,000.

42 U.S.C. § 1981a(b)(3). The parties stipulated that Sheriff Claussen employed between

100 and 201 employees. See Aplt's App. vol. I, at 180 (District Court Order on

Defendant's Motion to Reconsider, filed April 29, 1998, noting the parties' stipulation).

Thus, Sheriff Claussen asserted that the jury's award of these damages should be reduced

to $100,000.[6]

The district court rejected Sheriff Claussen's argument. It reasoned that

§1981a(3)'s limitation on damage awards for "future nonpecuniary losses" did not apply

to awards of front pay because such awards were authorized by another statute, 42 U.S.C.

---

[5] As noted above, the district court also awarded Mr. Hall $66,395 in lost back pay. Sheriff Claussen did not seek a reduction in this award pursuant to the § 1981a(3) cap on damages. Back pay awards are excluded from that damages cap. See 42 U.S.C. § 1981a(b)(2).

[6] In his appellate brief, Mr. Hall advances the alternative theory that it was Mesa County, Colorado as a whole (with 450 employees), rather than the Sheriff's Office, that was his employer. Because we conclude that the § 1981a(3) damages cap is not applicable to awards of front pay, consideration of that argument is not necessary to the resolution of this appeal. In any event, the case proceeded to trial on the theory that it was the Sheriff's Department that was Mr. Hall's employer, and Mr. Hall has offered insufficient evidence to indicate that his actual employer was the County.

39

§ 2000e-5(g), which authorizes awards of "other equitable relief."

Sheriff Claussen now challenges that ruling. In the alternative, he contends that the award of front pay should have been decided by the court rather than by the jury. Because the district court's interpretation of the applicable statutes involves questions of law, we engage in de novo review. Medlock v Ortho Biotech., Inc., 164 F.3d 545, 549 (10th Cir. 1999).

The district court's reading of the statute is supported by our decision in Medlock. There, we noted that 42 U.S.C. § 1981a(b)(2) expressly excludes certain forms of relief from the damages cap. "These exclusions include 'backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964 [ 42 U.S.C. § 2000e-5(g) ].'" Medlock, 164 F.3d at 556 (quoting 42 U.S.C. § 1981a(b)(2)). One remedy authorized by § 706(g) of the Civil Rights Act (42 U.S.C. § 2000e-5(g)) is "other equitable relief" that "the court may grant if deemed appropriate." Front pay, we concluded in Medlock, constitutes "other equitable relief." Other circuits have reached the same conclusion. See Kramer v. Logan County School Dist. No. R-1, 157 F.3d 620, 626 (8th Cir. 1998) (concluding that "front pay is an equitable remedy excluded from the statutory limit on compensatory damages provided for § 1981a(b)(3)"); Williams v. Pharmacia, Inc., 137 F.3d 944, 953-54 (7th Cir. 1998) (distinguishing an award of front pay from an award of damages for a loss of future earnings and noting that the latter compensated the plaintiff "for a lifetime of diminished

40

earnings resulting from the reputational harms she suffered as a result of [the defendant's] discrimination"); see also 5 Larson, Employment Discrimination § 93.03, at 93-11 ("[T]he sweeping exemption for 'any other type of relief authorized under section 706(g)' of Title VII will likely compel the courts to exclude traditional front pay from the definition of 'future pecuniary loss.'"); Christy W. Showalter, Front Pay Under the Damages Caps of the Civil Rights Act of 1991: Legal Remedy or Equitable Relief, 30 U. Mem. L. Rev. 887, 919 (2000) (concluding that, "[b]ased . . . on the statutory interpretation and legislative history of the Civil Rights Act of 1991, the policy guidelines of the EEOC, and the judicial treatment of front pay as an equitable remedy under the Civil Rights Act of 1964, front pay should be treated as equitable relief authorized by section 706(g) and, thus, excluded from the damage caps outlined in § 1981a(b)(3)"). But see Hudson v. Reno, 130 F.3d 1193, 1203 (6th Cir. 1997) (stating that "'front pay', by both its definition and purpose in the law, is a 'future pecuniary loss' [under §1981a(b)(3)] because it is a monetary award for the salary that the employee would have received but for the discrimination").

Nevertheless, we agree with Sheriff Claussen that awards of front pay must be made by the court rather than by a jury. In McCue v. Kansas Department of Human Resources, 165 F.3d 784, 792 (10th Cir. 1999), we vacated a jury award of front pay on a Title VII retaliation claim, concluding that such an award did not constitute damages for "future pecuniary losses" under § 1981a(b)(3). We reasoned that, prior to the passage of

section 1981a, we had held that front pay was an equitable remedy available under 42 U.S.C. § 2000e-5(g) because it constituted "other equitable relief." McCue, 165 F.3d at 792 (citing EEOC v. General Lines, Inc., 865 F.2d 1555, 1561 (10th Cir.1989)). Because front pay was available as "other equitable relief" when Congress passed 42 U.S.C. § 1981a, front pay was not included in the damages for "future pecuniary losses" that Congress authorized juries to award under 42 U.S.C. § 1981a.

In his appellate brief, Mr. Hall defends the district court's imposition of the front pay award. He notes that the district court adopted the jury's award in a separate order and judgment adjudicating Sheriff Claussen's post-trial motion for judgment as a matter of law. See Aplt's App. vol. I, at 126-40. According to Mr. Hall, it was not an abuse of discretion for the district court to adopt the jury's front pay award as its own.

We are not persuaded by Mr. Hall's argument. Determining front pay requires the district court to predict future events and consider "many complicated and interlocking factors." Mason v. Oklahoma Turnpike Auth., 115 F.3d 1442, 1458 (10th Cir. 1997). A front pay award must identify an end date, Davoll v. Webb, 194 F.3d 1116, 1142 (10th Cir. 1999), and the court must provide an explanation of that date that indicates that it is based on more than "mere guesswork." Carter v. Sedgwick County, Kan., 929 F.2d 1501, 1505 (10th Cir. 1991). We have identified many factors that are relevant to the court's determination of an appropriate amount: work life expectancy, salary and benefits when the plaintiff's employment was terminated, potential increases in salary

42

that the plaintiff could have received, the availability of other work opportunities, the period that it would take the plaintiff to become reemployed, and the discounting of the award to net present value. Id. at 1143. See also McCue, 165 F.3d at 792 (stating that "'[b]ecause of the potential for windfall, . . . [the award of front pay] must be tempered'" and that "[t]he district court is best-equipped to equitably determine the proper amount for this award") (quoting Duke v. Uniroyal Inc., 928 F.2d 1413, 1424 (4th Cir.1991)).

Here, the court's instructions informed the jury that it could award damages for "future pecuniary losses" and that it should reduce the award to take into account the expenses that the plaintiff would have incurred in making future earnings as well as the interest that the plaintiff could earn on the award. See Aplt's App. vol. I, at 113-14. However, there is no indication that the jury was informed of the other factors that must be considered in making a front pay award, and, more importantly, there is no indication that the district court itself considered those factors before approving the award.

From our review of the record, we conclude that the jury's award of $225,000 "as damages for future earnings," see Aplt's App. vol. I, at 12, represents an award of front pay. See James v. Sears, Roebuck & Co., 21 F.3d 989, 997 (10th Cir. 1994) (stating that "[f]ront pay refers to the award of money as compensation for the future loss of earnings"); Medlock, 165 F.3d at 555 n.8 (concluding that a verdict form's reference to "future damages" signified front pay only); Aple's Br. at 55 (characterizing the $225,000 damages award as representing earnings that Mr. Hall "would have received as deputy

sheriff"). Because the determination of front pay is for the court rather than for the jury and because the record does not indicate that the district court considered the appropriate factors before entering the award, we conclude that the $225,000 award of future earnings should be vacated and the case should be remanded to the district court for a determination of the proper amount of front pay under the standards noted above. As we have observed, the $100,000 damages cap set forth in 42 U.S.C. § 1981a(3) will not be applicable to any subsequent award of front pay.

## I. Award of Costs (Mr. Hall's Cross-Appeal)

In a post-trial motion, Mr. Hall sought to recover $27,592.92 in costs as the prevailing party. The court clerk concluded that Mr. Hall was entitled to an award of only $2,675.08. Mr. Hall appealed that ruling to the district court, which awarded him only an additional $567.80. In his cross-appeal, Mr. Hall challenges the district court's decision on two grounds, arguing that it erred in analyzing the applicable statutes governing the award of expert witness fees and that the court erred in refusing to award other costs. We review the district court's decision to award costs for an abuse of discretion. Mitchell v. City of Moore, Okla., 218 F.3d 1190, 1198 (10th Cir. 2000). However, we review de novo the district court's interpretation of the statutes underlying its decision. See Neustrom v. Union Pac. R.R., 156 F.3d 1057, 1067 (10th Cir.1998).

1.  The denial of expert witness fees

In his post-trial motion, Mr. Hall sought over $14,092.02 in expert witness fees. The district court found this amount grossly excessive, concluding that under 28 U.S.C. §§1920 and 1821(b), witness fees are recoverable only in the amount of $40 per day for each witness.

Mr. Hall acknowledges that, in Crawford Fitting Co. v. J.T. Gibbons Inc., 482 U.S. 437 (1987), the Supreme Court held that expert witness fees were not recoverable beyond the per diem limits set by §§ 1821 and 1920. However, Mr. Hall notes that the court stated that these per diem limits are applicable "absent explicit statutory or contractual authorization." Id. at 445

Here, Mr. Hall argues, there is such statutory authorization for the recovery of expert witness fees beyond the per diem amounts. In particular, he invokes the provisions of the ADA that incorporate the expansive remedies of Title VII of the Civil Rights Act of 1991. Mr. Hall notes that 42 U.S.C. § 12205 states that a prevailing party may recover "a reasonable attorneys fee, including litigation expenses and costs." Section 12217 of the ADA provides plaintiffs in ADA cases with "[t]he powers, remedies, and procedures set forth in" certain sections of the Civil Rights Act, including 42 U.S.C. § 2000e-5. See 42 U.S.C. § 12117. Finally, § 2000e-5 states that "[i]n any action or proceeding under this title, the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorneys fee

45

(including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k) (emphasis added). Thus, Mr. Hall maintains, this provision, incorporated by reference into the ADA, provides the express statutory authorization necessary to award expert witness fees beyond the per diem amounts set forth in the generally applicable cost statutes.

Mr. Hall's argument is supported by the history of § 2000e-5(k). In the Civil Rights Act of 1991, Pub.L. 102-166, 105 Stat. 1072, Congress amended 42 U.S.C. § 2000e-5(k) in response to a prior decision that had held that expert fees were not recoverable as part of an attorneys fees award under 42 U.S.C. § 1988. Landgraf v. USI Film Prods., Inc., 511 U.S. 244, 251 (1994) (citing West Va. Univ. Hosps., Inc. v. Casey, 499 U.S. 83 (1991)). This circuit has noted that the legislative history of the 1991 Act indicates that Congress intended the civil rights laws to be broadly construed, particularly in light of the fact that recent Supreme Court decisions had "'deviat[ed] repeatedly from this principle and giv[en] unduly narrow constructions to civil rights statutes.'" Gudenkauf v. Stauffer Communications, Inc., 158 F. 3d 1074, 1079 (10th Cir. 1998) (quoting H.R.Rep No. 102-40(I) at 87-88 (1991), reprinted in 1991 U.S.C.C.A.N. at 625-26)). We further observed that "'the legislative history is replete with references to Congress's intention that civil rights laws are to be broadly construed consistent with their remedial purpose.'" Id. at 1079.

In light of that history, we agree with those courts that have concluded that 42 U.S.C. § 2000e-5(k) provides express statutory authority for an award of expert witness

fees in excess of the per diem amounts set forth in 28 U.S.C. § 1821. See O'Rourke v. City of Providence, 77 F. Supp.2d 258, 271 (D.R.I. 1999) ("[T]he amendment [to § 2000e-5(k)] makes clear that expert witness fees in excess of § 1821 witness costs are recoverable in Title VII cases."); Benson v. Northwest Airlines, Inc., 1997 WL 122997, No. 4-97-581, at *6 (D.Minn. 1997) (stating that "the plain language of § 2000e-5(k) permits an award for expert fees greater than the limits under § 1821"). Accordingly, § 2000e-5(k) authorizes an award of costs for expert witness fees in excess of those awarded to Mr. Hall under § 1821.

Because the district court erroneously applied the § 1821 limits to Mr. Hall's request to recover expert witness fees, we will vacate the court's denial of that request and remand the case to the district court for consideration of an award of expert fees to Mr. Hall pursuant to 42 U.S.C. § 2000e-5(k).

2. Denial of other costs

Mr. Hall also challenges the district court's denial of other requested costs. He focuses on: (1) depositions allegedly relevant to the district court's summary judgment ruling (depositions of Lt. Miller, Captain Gardner, Undersheriff Wooley, and Captain Wagner), (2) fees for various witnesses whom Mr. Hall subpoenaed but did not call to testify and whom Sheriff Claussen did call to testify; (3) costs for preparing trial exhibits; (4) the costs of medical reports; and (5) other litigation costs, including travel, hotel,

meals, photocopying, and long distance charges.

In light of the district court's familiarity with the litigation, we vest it with considerable discretion in determining the appropriate amount of costs to be awarded. Here, our review of the record indicates that the district court made no legal errors and properly exercised its judgment based on its knowledge of the case. Therefore, we will affirm its decision to award these other costs in reduced amounts.

## III.  CONCLUSION

Because a correctly-instructed jury heard sufficient evidence to support Mr. Hall's ADA claims, we conclude that the district court properly denied Sheriff Claussen's motions for judgment as a matter of law and for a new trial. However, the district court erred in submitting the consideration of front pay to the jury and in concluding that Mr. Hall's request to recover expert witness fees was limited to the per diem amounts set forth in 28 U.S.C. § 1821.

Accordingly, we AFFIRM the judgment in favor of Mr. Hall and against Sheriff Claussen on Mr. Hall's ADA claims. We VACATE the judgment in favor of Mr. Hall to recover $225,000 in future earnings, and we VACATE the district court's order awarding costs to Mr. Hall insofar as it limits his recovery of expert witness fees to the per diem amounts set forth in 28 U.S.C. § 1821. We AFFIRM the district court's award of costs to Mr. Hall in other respects. We REMAND the case to the district court for

further proceedings consistent with this opinion.

Entered for the Court,

Robert H. Henry
United States Circuit Judge

.

49